Elizabeth J. Winger, Plaintiff-Appellee, v. Richards-Wilcox Manufacturing Company, a Corporation, Gordon S. Culver, President, and Mrs. Gordon S. Culver, Secretary, Defendants-Appellants.

Gen. No. 48,226.

First District, Third Division.
September 27, 1961.
Rehearing denied October 23, 1961.

Reid, Ochsenschlager, Murphy & Hupp, of Aurora (Frank R. Reid, Jr., Lambert M. Ochsenschlager, and William C. Murphy all of Aurora, of counsel), for appellants.

Pope, Ballard, Uriell, Kennedy, Shepard and Fowle, of Chicago (W. McNeil Kennedy, Edmund W. Sinnott, and Roy S. Kullby, all of Chicago, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

Four stockholders brought a mandamus action against the defendants, the Richards-Wilcox Manu-

facturing Company, its president and its secretary. The stockholders were three brothers, Richard, John and Thomas Wise, and their sister, Elizabeth Winger. Their complaint alleged that the defendants refused to permit them to examine the company's books and records. After various pleadings had been filed, Elizabeth Winger moved for summary judgment. Her motion was granted, a writ of mandamus was ordered and the president and secretary were held liable to her for the statutory penalty. Ill Rev Stats c 32, § 157.-45 (1959).

The company and the two officers appeal from the order granting summary judgment and from the order denying their motion to vacate the judgment. Although the issues of the case are unresolved as to the three Wise brothers, the trial court made an express finding that there was no just reason for delaying the appeal. Ill Rev Stats c 110, § 50(2) (1959).

The orders appealed from are final insofar as the Richards-Wilcox Company is concerned, but as to the president and secretary there remains to be determined the amount of the judgment against them for ten per cent of the value of Elizabeth Winger's stock. Since the orders as to the individual defendants are not final, their appeal will be dismissed.

Section 45 of the Business Corporation Act states that for a proper purpose a stockholder has the right, at any reasonable time or times, to examine a company's books. The corporate defendant's amended answer raised the issue of the plaintiffs' good faith; it charged that the action had been brought for an improper purpose, that it was to harass the defendant and to force it to pay an exorbitant price for the plaintiffs' shares. The principal question before us is whether this is a genuine issue of fact which should have precluded the summary judgment. Ill Rev Stat c 110, § 57(3) (1959).

119

Before attempting to answer this question we must decide what evidence can be considered. Affidavits of the defendant are in dispute and the issues pertaining to them are two: may a court permit the filing of counter-affidavits after summary judgment has been entered, and can parts of depositions be incorporated in a summary judgment affidavit, if the depositions have not been filed in the case? The dispute arose in the following way: the plaintiff's motion for summary judgment and the defendant's motion to strike were set for hearing on January 8, 1960, at which time the motion to strike was denied and the motion for summary judgment was granted. The attorney for the defendant was absent on January 8th and he filed an affidavit explaining why he had not been present and moved to vacate the order of that date. Later he was granted leave to file his own affidavit and another in opposition to the motion for summary judgment. The argument over these two affidavits is somewhat academic. The attorney's affidavit, as we shall see, is so replete with conclusions, that it is of little value. The second affidavit merely incorporated by reference an affidavit already before the court, one which had been filed in support of the defendant's own motion for summary judgment.

■ ■ Section 57(3) of the Civil Practice Act provides that affidavits in opposition to motions for summary judgment are to be filed before or at the time of the hearing on the motion. But on January 8th the defendant had pending a motion to strike; there was no need to file the affidavits until this motion was ruled upon. If its motion were sustained, counter-affidavits would be unnecessary; if its motion were denied, leave could be asked for time to file the affidavits. Because of a misunderstanding, the defendant was not represented in court when its motion was denied. Under this circumstance it should not be re-

fused the privilege of fully presenting its evidence. Whether to allow affidavits to be filed after the hearing is ordinarily within the discretion of the court. Gliwa v. Washington Polish Loan & Bldg. Ass'n, 310 Ill App 465, 34 NE2d 736. The court properly exercised its discretion in this case.

■ The second question is the content of the personal affidavit of the defendant's attorney. It contained excerpts from depositions taken from the Wise brothers and it is contended that this was improper inasmuch as the depositions had not been placed on file. The plaintiff cites section 57(3) of the Civil Practice Act ("The judgment . . . shall be rendered . . . if the pleadings, *depositions* and admissions *on file*. . . .") and relies upon Sobelman v. Caliendo, 23 Ill App2d 314, 162 NE2d 598. The Sobelman case differs from the instant one in that the affidavit in that case merely recited the conclusions of the affiant as to the content of a deposition, whereas in this case quotations from the deposition are given. The problem has been passed upon by this court in Ness v. Bilbob Inn, Inc., 15 Ill App2d 340, 146 NE2d 234, wherein using parts of an unfiled and formally incorrect deposition in an affidavit for summary judgment was approved, where such parts constituted admissions against interest. The excerpts in this case were for the same purpose; they were submitted to show that the plaintiff had a different reason for examining the company's books than stated by her, and to show that her brothers were acting as her agents in their negotiations with the company.

Turning now to the evidence—from the complaint, amended answer, motions and the melange of exhibits and affidavits, including those we have just discussed, the following facts are disclosed: the Richards-Wilcox Company is a closely held corporation—controlled by the individual defendants and two other directors—

which does not issue financial statements to its shareholders. It has 5,247 shares of stock which are unlisted and have no publicly known market value. Elizabeth Winger owns 18 shares of stock and her brothers 52 shares. They inherited the shares from their parents who had owned them for more than 20 years.

On April 10, 1958, Richard Wise wrote the president saying that he had attended the annual stockholders' meeting on March 15th and requested income statements, balance sheets and surplus account statements for 1957, 1956 and 1955 so that he could become more familiar with the company's operations. The company replied that it was not its policy to publish or send out confidential financial information, but if Wise wished to call at the company's office the subject could be discussed further. On June 17th Richard, John and Thomas Wise wrote the president saying that as shareholders they wished to know the value of their shares and wanted a list of other shareholders so that they could contact them with a view to selling their stock. They said that if a convenient time could be arranged they would send an auditor to the company to obtain the information. The company replied that their letter had been turned over to its attorney. The attorney wrote them that he would be glad to discuss the matter after his return from a vacation. On July 3rd the three brothers again wrote the president. They said they wanted a date set within two weeks for their auditor to obtain the information they desired and if this was not done they would consult their attorney. The company replied on July 7th that it was very willing to supply the brothers with all the financial information to which they were entitled. Thereupon, July 17th was fixed for the auditor's visit.

He spent two hours inspecting the company's audit reports for several prior years and the list of shareholders. The assistant treasurer of the company, in

an affidavit, said that other financial records were available to the auditor but that he declared he didn't need them. In a counter-affidavit the auditor denied that any other records or books were offered to him or that he declined to use them.

In a letter dated August 13th Thomas Wise thanked the president for the information given to the auditor and inquired if he knew of anyone who would be interested ". . . in acquiring the seventy (70) shares of the Company owned by our family." On September 2nd the president asked what price Wise had in mind. Thomas Wise replied on September 10th that he felt a fair price would be somewhere near the book value of the stock. He wrote: "We would be glad to consider an offer made by anyone interested in acquiring all of the shares of the family." The company's treasurer responded on September 11th that he had communicated Wise's offer to six stockholders and two executives but that no one was interested.

On October 1st Elizabeth Winger joined her brothers in addressing a letter to the company and to its president and secretary, requesting permission to examine the company's books and records of account, reserves, minutes of directors and executive committee meetings, officers' and directors' salaries, bonuses, retirement plans and expense accounts, company-owned-aircraft logs, and the record of the shareholders. The purposes of the examination were stated to be: establishing the value of their shares, the determination of the legality and reasonableness of officers' and directors' salaries, bonuses and expenses and an analyzation of the company's dividend policy. The letter related several complaints the writers had with the company and said they had been informed that the company would refuse to permit the examination. The letter ended with the warning that legal action would follow the refusal to grant their formal request. An

123

exchange of correspondence between attorneys ensued in which the attorney for the company said the board of directors refused to permit any re-examination of the books, and in which the attorney for the stockholders explained that they were asking to see different books than the auditor had seen and that this was Elizabeth Winger's first and only request.

The complaint followed in November 1958. The defendant answered, demanded a jury trial and moved for summary judgment, which was denied. Depositions were taken. The portions of the depositions of Thomas and John Wise appearing in the affidavit of the defendant's attorney were to the effect that the brothers were not interested in selling their stock, but wanted to ascertain the value of their investment in the company. The statements that they were not interested in selling their stock were in contradiction to those made in their letter of June 17th, and in Thomas Wise's letters of August 13 and September 10, 1958.

The defendant's charge of bad faith or improper purpose depends upon these conflicting statements and upon an accusation made in the affidavit of the defendant's attorney that ". . . plaintiffs have consistently attempted to secure the sale of their stock to the defendants on repeated occasions before and after the commencement of this suit. . . ." No details are given in support of this general accusation. If the attorney personally participated in any discussion or witnessed the attempts his affidavit should have said so. If attempts were made to sell the stock to the defendants, the affidavit should have been made by the defendants. Rule 15 of the Supreme Court (Ill Rev Stats c 110, § 101.15(1)) states that summary judgment affidavits shall be made upon the personal knowledge of the affiant and shall affirmatively show that the affiant, if sworn as a witness, could com-

petently testify to the facts set forth in the affidavit. The letters of June 17, August 13 and September 10, 1958, show that overtures to sell the stock were made before the suit was started, but the assertion that repeated attempts were made to sell the stock after the commencement of the suit, is pure hearsay. There is nothing in the affidavit or record to show that the attorney could competently testify to that fact and this portion of his affidavit must be disregarded.

The charge that an exorbitant price was demanded for the stock is unsubstantiated except by another statement in the same affidavit: ". . . this action is part of an attempt, scheme and plan by all the plaintiffs to force the defendants to pay to the plaintiffs an exorbitant price for the stock which plaintiffs own in defendant corporation. . . ." This is merely a conclusion, is patently incapable of being testified to competently, and must also be disregarded. There is nothing in the exhibits or the competent affidavits to show that any demand was made for an excessive price for the shares. There are only two references to price, one in Thomas Wise's letter of September 10th, wherein he wrote: "In answer to your question about a fair price for this stock, we feel that it should be somewhere near the book value of the stock." The other is in the complaint which estimated the value in excess of $1,500.00 per share. Certainly, a price somewhere near book value cannot be said to be exorbitant, and the figure of $1,500.00 was, as the complaint made plain, the belief of the complainants which ". . . they have no way of determining . . . except by and through an examination of the books, records of account and minutes. . . ."

■ The charge of harassment must rest upon the fact that a second examination was asked in October after the one had taken place in July and upon the stockholders' desire to look into executive salaries,

bonuses and expenses. The company seems to be proceeding on the theory that a stockholder is entitled to but one examination. This is not what the statute says. It says that a stockholder, at any reasonable time or *times,* may see a company's records. A prior inspection of the corporate records does not necessarily taint with bad faith a subsequent request. In determining if the second request was sincerely made and if a genuine factual issue has been raised as to harassment, we must recognize the type of company this is, closely held, dominated by a few, publishing no financial statements, with a net worth of $7,500,000, reserves of over $2,500,000, with a policy of paying little in dividends and much into surplus and reserves, and with a wholly owned subsidiary company whose books had not been examined at all. There must be taken into consideration the company's attitude towards its minority shareholders as evidenced by the reluctance with which the first examination was permitted and the delay of three months between the initial request and the inspection. The conduct of the auditor must be considered also. If the auditor had created a disturbance, had taken an unreasonable time or had made vexatious demands, a second visit might be regarded as harassment, but there was no complaint that he did not conduct himself in a proper manner.

 A person who owns shares in a company is a part owner of that company and he is entitled, for the protection of his own interest, to information about the company. If the information is not made public, or is not sent to him or is not made available to him upon request, his right to ascertain this information for a proper purpose cannot be denied. He has a right to know what its management is doing, what its practices and policies are, what expenditures are being made, what his stock is worth, the reasons for a dividend policy that depresses the value of his stock and

decreases its marketability, whether the salaries of those who are in control—and their income tax brackets—may be the reason for the small dividends, who the other stockholders are and where, as here, there is no open market for the stock, to inquire of other shareholders if they might be interested in purchasing his shares. The nature of the Richards-Wilcox Company is such that the request for a second examination of its records for the purposes stated was proper and there is no evidence that it was made to harass the defendant.

Construing the affidavits and exhibits of the defendant most favorably and scrutinizing the affidavits and the exhibits of the plaintiffs most critically confirms our conclusion that if there is an issue of improper purpose on the part of the plaintiffs it must depend upon the different declarations made by the Wise brothers in their letters and depositions. Both of their stated purposes, selling the stock and ascertaining its value, are proper, but the conflicting statements can bring about inferences which might cast doubt upon their motives and veracity. Whether Elizabeth Winger would be bound by these inferences depends upon whether her brothers were acting in her behalf, for she did not sign any letter before the one of October 1st and she did not ostensibly participate in the negotiations with the company or in the prior examination of its books.

A portion of the deposition of Richard Wise, excerpts from the letters of Thomas Wise and the affidavit of the defendant's attorney are relied upon to support the defendant's argument that her brothers acted as her agents. In his deposition Richard Wise said that after the brothers had made the decision to hire an auditor his sister was apprised of the decision. He was asked if from that time on he was acting for his sister as well as for his brothers,

127

and he replied: "We are all acting together, as a group." He was also asked if his brother Thomas had shown him the letter of August 13, 1958, before it was mailed, and he replied: "No," and "We are a closely knit family and when we agree to follow something through, whatever one does is perfectly suitable with the other." The excerpts were those heretofore quoted from the letters of Thomas Wise in which he asked if anyone was interested in the 70 shares "owned by our family" and "We would be glad to consider an offer made by anyone in acquiring all the shares of the family." While these statements of Richard and Thomas may indicate that Elizabeth was aware of what her brothers were doing or had done, they are no proof that she authorized what they did. None of the statements relate facts or circumstances which show that she gave them authority to speak or act for her. They are at best but the declarations of purported agents, and agency cannot be proved by such declarations: "It is well settled that where the existence of an agency is an issue in a case, where the alleged principal is a party, the mere statements of the agent made out of the presence of the principal and not subsequently approved by him are not admissible to establish the existence of such relationships." Frederich v. Wolf, 383 Ill 638, 50 NE2d 755. Moreover, joining her brothers in a legal complaint which recited their prior actions does not of itself constitute ratification of those actions, and neither the blood relationship between them nor the fact that they were a closely knit family establish their right to be her agents.

The affidavit of the attorney states that Elizabeth Winger aided, abetted and consented to her brothers' acts, that they were her agents, that the letters were signed by them in her behalf, and that the acts of one were the acts of all. Once again, however,

the affidavit gives no facts upon which the so-called personal knowledge of the attorney is based nor does it reveal how he could, as it said, ". . . competently testify to all facts hereinafter appearing." The affidavit was adroitly drawn, but it is clear that the attorney's personal knowledge is limited to his own inferences from the exhibits and depositions. When the question of filing this affidavit was being argued before the trial court, the attorney disclosed the manner of its composition by such comments as: "Now I actually say, Judge, in this affidavit, *excerpting from the depositions* of the remaining plaintiffs . . . they . . . acted together as a group . . . "; and the following: ". . . bad faith of the other plaintiffs is attributable to Elizabeth J. Winger, and I show, by *excerpting from their depositions,* as to what they would testify to, at the trial of this cause. . . ." The statement by a third person in a summary judgment affidavit that an agency exists does not make it so. The affidavit, depositions and letters do not show that there is any competent evidence which could legally sustain the charge of agency.

■ If there is a triable issue of fact as to the three brothers, there is clearly no such issue insofar as Elizabeth Winger is concerned. She entered the picture after the first examination was completed (parenthetically, the auditor swore that he was employed by all the plaintiffs except her) and made but one request to inspect the defendant's books. Although the defendant's amended answer created an issue between the parties, the defendant's affidavits and other proof wholly failed to support the issue as to Elizabeth Winger. The mere assertion that there is an issue of fact does not prove that there is. A party may be able to assert a good defense in an answer but may fall far short of substantiating the assertion when forced to disclose his defense through affi-

129

davits consisting of facts admissible in evidence. As was said in Gliwa v. Washington Polish Loan & Bldg. Ass'n, supra: "The pleadings (important) are not controlling. If it appears from facts stated in affidavits or documents that the answer pleaded is sham or false or frivolous it will be disregarded." Raising an issue in the pleadings does not preclude the entry of a summary judgment. In St. Louis Fire and Marine Ins. Co. v. Garnier, 24 Ill App2d 408, 164 NE2d 625, it is stated: "Where plaintiff's affidavits are sufficient, entry of summary judgment is not prevented by reason of the fact that defendant has filed pleadings which on their face set up a good defense. Killian v. Welfare Engineering Co., 328 Ill App 375, 66 NE2d 305."

We find that there was no genuine issue of fact before the court as to Elizabeth Winger when the summary judgment was entered, that the affidavits filed subsequently did not raise such an issue, and that she is, as a matter of law, entitled to the writ of mandamus. The court correctly granted the summary judgment and correctly denied the motion to vacate that judgment.

Affirmed as to the defendant Richards-Wilcox Manufacturing Company. Appeal dismissed as to the defendants Gordon S. Culver and Mrs. Gordon S. Culver.

McCORMICK, P. J. and SCHWARTZ, J., concur.