Arnold J. WEBER, on behalf of himself and all others similarly situated, Plaintiff,

v.

CONTINENTAL MOTORS CORPORATION and Teledyne, Inc., Defendants.

69 Civ. 2963.

United States District Court
S. D. New York.

Aug. 11, 1969.

Kreindler & Kreindler, New York City, and Lippe & Ruskin, Mineola, N. Y., for plaintiff, Stanley J. Levy, Paul M. Bernstein, New York City, Richard A. Lippe, Mineola, N. Y., of counsel.

Donovan, Leisure, Newton & Irvine, New York City, for defendants, George S. Leisure, Jr., Edward F. McCabe, William M. Kahn, New York City, of counsel.

## MEMORANDUM

BONSAL, District Judge.

Plaintiff, a stockholder of defendant Continental Motors Corporation (Continental), a Virginia corporation, 62.2% of whose common stock is owned by the Ryan Aeronautical Corporation (Ryan), which in turn is wholly owned by defendant Teledyne, Inc. (Teledyne), commenced this action, on behalf of himself and all other minority stockholders of Continental, against Continental and Teledyne. On July 11, 1969, plaintiff moved by order to show cause for a preliminary injunction, enjoining Continental from accepting any Continental common stock which might be tendered pursuant to an Exchange Offer, and for an order requiring Continental to furnish plaintiff with a list of Continental stockholders and any current transfer lists.

On December 31, 1968, Teledyne bought 96.3% of Ryan, and on February 18, 1969, Teledyne merged Ryan with a wholly-owned subsidary. In January, 1969, three members of the Continental Board of Directors resigned, and an officer of Teledyne and an officer of Ryan were named to the Continental Board. On March 19, 1969, Continental's Board voted to discontinue the payment of the quarterly cash dividend of $.10 on its common stock, which it had paid for many years.

On May 27, 1969, Continental's Board announced its intention to offer to exchange one $30.00, 20-year, 7% subordinated debenture for each share of Continental's outstanding common stock. The offer became effective on June 11, 1969, and was to expire on July 18, 1969, but the offer has been extended to August 15, 1969. The announcement of May 27, 1969, stated that "Ryan does not presently intend to tender any of its shares pursuant to the Exchange Offer and accordingly, its percentage of ownership will increase if other shareholders tender their shares"; and that Continental "is currently negotiating for the sale of certain [assets] representing * * * approximately 20% of its total book assets * * * [which] are used to produce * * * approximately 20% of [Continental's] sales."

Plaintiff alleges that Continental's Exchange Offer is inequitable and is designed to benefit Teledyne at the expense of the minority stockholders. Plaintiff further alleges that the discontinuance of the dividend (in the face of record net earnings for the previous fiscal year) and the Exchange Offer are part of a scheme designed to artificially depress the price of Continental common stock, to force the minority stockholders to surrender their common stock at an unfair price, and to deprive them of their statutory right of appraisal.

### I. *Application for a preliminary injunction*

Plaintiff offers no facts to support his assertions that the price of Continental common stock has been artificially depressed, that the basis of the Exchange Offer is unfair, or that the defendants intend to raid Continental by selling 20% of its assets in a way to reduce the "going concern" value of the corporation.

While the price of the common stock reclined 1¼ points immediately after the discontinuance of the dividend, it rose sharply after the announcement of the Exchange Offer, and during the past

three weeks, it has traded in the range of 20⅝ to 22½.*

With respect to the alleged "raid" of Continental's assets, Continental states that the company has been attempting to sell these assets for the past year, starting before Teledyne acquired control of Ryan and Continental, and that the contemplated sale is still under negotiation.

Plaintiff has also made no showing of irreparable injury to the minority stockholders if the injunction is not granted. If at trial, plaintiff proves his allegations, the court can order payment of the dividends, set aside the Exchange Offer, and award damages.

On the other hand, if the injunction were granted, the damage to Continental, as well as to the Continental stockholders who wish to accept the Exchange Offer, would be irreparable. The money which Continental has expended on the Exchange Offer would be irretrievably lost. The Continental stockholders who wish to exchange their common stock for debentures would be deprived of that opportunity. Symington Wayne Corp. v. Dresser Industries, Inc., 383 F.2d 840 (2d Cir. 1967).

■ The "extraordinary relief" of an injunction will not be granted except upon a clear showing of probable success and possible irreparable injury. Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319 (2d Cir. 1969); Clairol, Inc. v. Gillette Co., 389 F.2d 264 (2d Cir. 1968). Plaintiff has not made a sufficient showing of either to warrant granting the injunction. Nor does the "balance of hardships [tip] decidedly toward the party requesting the temporary relief." Dino De Laurentiis Cine-matografica, S.p.A. v. D–150, Inc., 366 F.2d 373, 375 (2d Cir. 1966).

Therefore, plaintiff's application for a preliminary injunction is denied.

## II. Application to inspect stockholders' list

■ The law of Virginia, the state of Continental's incorporation, provides as follows:

"* * * upon written demand stating the purpose thereof, [a stockholder] shall have the right to examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose, its books and records of account, minutes and record of stockholders and to make extracts therefrom.

"Nothing herein contained shall impair the power of any court of competent jurisdiction, upon proof by a stockholder of proper purpose * * * to compel the production for examination by such stockholder of the * * record of stockholders of a corporation." (Code of Virginia (1950), § 13.1–47)

Therefore, upon written demand, plaintiff has the right to examine the stockholders' list for any proper purpose, and to make extracts therefrom. On June 12, 1969, before instituting this action, plaintiff wrote to Continental's president stating that he was dissatisfied with the discontinuance of the dividend and the Exchange Offer and that he wished to communicate his views to other minority stockholders. He requested that Continental's president "be good enough to make available to me a current list of the shareholders of Continental Motors Corporation." It ap-

---

\* On March 18, 1969, one day before the announcement of the discontinuance of the dividend, Continental was selling at 22¾. The stock declined ¾ on the day of the announcement, and ½ on the day after, closing at 21½. Two months later, on May 26, 1969, one day before the announcement of the Exchange Offer and the negotiations for the sale of assets, Continental was selling at 19; on the day of the announcement, the stock rose 2½, and the day after the announcement, the stock rose 1¼, closing at 22¾. From May 28, 1969, through June 20, 1969, the stock declined 4⅞ points, closing at 17⅞. Since June 23, 1969, the stock has risen as high as 22½ (on July 24, 1969) and closed at 21¾ on August 6, 1969.

pears that Continental did not respond to this request. This was a sufficient demand under the Virginia statute.

■ With respect to the "proper purpose" requirement of the Virginia statute, the requirements of § 13.1–47 are "not materially differ[ent] from the rules of the common law with respect to the rights of a stockholder to inspect the books and records of a corporation." Bank of Giles County v. Mason, 199 Va. 176, 98 S.E.2d 905, 908 (1957). A stockholder has the right to inspect the stockholder lists if his purpose relates to or is germane to his interest as a stockholder, Ochs v. Washington Heights Fed. S. & L. Assoc., 17 N.Y.2d 82, 268 N.Y.S. 2d 294, 215 N.E.2d 485 (1966), such as in wishing to communicate with other stockholders to urge them to reject a merger proposed by management, Application of Huber, 26 Misc.2d 563, 210 N.Y.S.2d 211 (1960), or to discuss the failure of management to pay dividends, see Winger v. Richards-Wilcox Mfg. Co., 33 Ill.App.2d 115, 178 N.E.2d 659, 664–665 (1961). Plaintiff's purpose as stated in his letter was a proper one related to his interest as a stockholder.

■ Continental contends that this court has no power to issue an order directing a corporation to produce a stockholders' list for the inspection and copying of plaintiff, because such an order is in the nature of a writ of mandamus. Neuwirth v. Merin, 267 F.Supp. 333 (S.D.N.Y.1967); Rosen v. Alleghany Corp., 133 F.Supp. 858, 865 (S.D.N.Y.1955). However, in the recent case of Stern v. South Chester Tube Co., 390 U.S. 606, 88 S.Ct. 1332, 20 L.Ed. 2d 177 (1968), the Supreme Court reversed a judgment dismissing a diversity action against a corporation where the plaintiff sought to inspect corporate records, including a stockholders' list. The Court held that the relief sought was not in the nature of a writ of mandamus, and that there is

"no other principle of federal law, whether judge-made, statutory, or constitutional, which bars the granting of a mandatory remedy here * * * [where] [p]etitioner undoubtedly has a right, under the substantive law of the State, to inspect the records of the corporation in which he holds stock, * * *. [T]he District Court * * does have power to issue the proper orders to enforce petitioner's state-granted right to inspect the corporate records." (390 U.S. at 609–610, 88 S.Ct. at 1334)

Therefore, plaintiff's motion is granted to the extent that he be allowed to inspect and make extracts from the record of stockholders and any current transfer lists, within 10 days of the order to be entered herein.

Plaintiff's motion for a preliminary injunction is denied and his motion for the production of Continental's stockholder list is granted to the extent set forth above.

Settle order on notice.