ABNER T. HARRIS, Plaintiff-Appellant and Cross-Appellee, v. PHILIP HANDMACHER et al., Defendants-Appellees and Cross-Appellants (Irving Waxman et al., Defendants-Appellees).

First District (4th Division)   No. 1—88—1541

Opinion filed June 29, 1989.—Rehearing denied August 2, 1989.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Alvin R. Becker and Timothy M. Kelly, of counsel), for appellant.

Schwartz, Cooper, Kolb & Gaynor, Chartered, of Chicago (David N. Missner and David O. Lehman, of counsel), for appellees Philip Handmacher and Betty Handmacher.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Abner Harris, deposited $250,000 in a bank as security for the debts of the Handmacher Company, Inc. Defendants, Philip and Betty Handmacher and Irving and Sandra Waxman, also secured the debts of the corporation. The business subsequently petitioned for bankruptcy and the bank seized Harris' deposit.

Harris brought an action in the circuit court of Cook County against defendants. Harris sought, *inter alia*, contribution from all defendants. The trial court granted summary judgment for Harris on his contribution claim and subsequently entered judgment against Irving and Sandra Waxman totalling $67,342 as their contribution.

Harris thereafter claimed that the Waxmans were insolvent and sought a redetermination of Philip Handmacher's proportionate share. The trial court denied Harris the motion for redetermination and Harris appeals from the denial.

We affirm the order of the trial court.

BACKGROUND

A

The record contains the following pertinent facts. Beginning in 1959, Harris and Philip Handmacher sold ladies' clothing and acces-

sories in and around Chicago under the name of "Handmoor." At first they were co-owners in a partnership, then later became shareholders of the Handmacher Company, Inc. In 1981, Harris sold his shares in the corporation and thereafter served the corporation occasionally as a consultant.

The Handmacher Company, Inc., borrowed money from the Continental Illinois National Bank. By February 1984, the corporation owed the bank $2,773,603. Continental refused to lend more money to the corporation unless it received sufficient collateral. On February 21, 1984, Harris deposited and pledged $250,000 with the bank, which in turn loaned the corporation additional funds.

On August 10, 1984, the corporation filed a petition for bankruptcy. (See 11 U.S.C. §1101 et seq. (1982).) The outstanding balance on the corporation's debt to the bank was $2,321,751. On that day, the parties made several agreements with the bank regarding the debt. Harris repledged his $250,000; Philip Handmacher and Irving Waxman each signed an unlimited guaranty; Philip and Betty Handmacher pledged their Chicago residence; and Irving and Sandra Waxman pledged their Highland Park residence.

Beginning November 29, 1984, the bank applied the following capital to the corporate debt: the Harris pledge, the proceeds from the sale of the corporation's assets, and the proceeds from the sale of the Handmachers' Chicago residence. The Waxmans made no payment to the bank under either their pledge or Irving's guaranty.

B

Harris filed a two-count complaint against defendants on December 14, 1984. In count I, Harris alleged that he and defendants are either coguarantors or copledgers of the debts of the corporation, and that he paid more than his proportionate share of the common debt, as compared to that of defendants. In count II, Harris sought reimbursement solely from Philip Handmacher, based on Handmacher's alleged oral promise to repay Harris the amount of his pledge.

On November 26, 1986, Harris moved for summary judgment against the Waxmans on count I of the complaint, which the trial court granted on March 30, 1987. On April 8, Harris filed another motion for summary judgment on count I, this time against the Handmachers. On July 17, the trial court granted Harris summary judgment against all defendants. Also in the judgment, the trial court ruled that it would determine the relative percentages of contribution as of August 10, 1984, and that the contribution would be based on a debt of $2,321,751.

On August 19, 1987, the trial court determined the actual amounts of defendants' contribution to Harris. The court entered judgment against Sandra Waxman in the amount of $17,982, and Irving Waxman in the amount of $49,360. The trial court found that Philip and Betty Handmacher had paid their proportionate shares; Harris, therefore, was not entitled to contribution from either of them. The court made no special findings pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)).

On March 3, 1988, Harris filed a motion to redetermine Philip Handmacher's contribution. Harris alleged that the Waxmans were insolvent. He included with his motion an affidavit by Irving and Sandra Waxman purporting to establish a *prima facie* case of their insolvency. He further alleged that Betty Handmacher was a pledger rather than a guarantor, and that she had paid the full amount of her pledge. Philip Handmacher, however, was a guarantor. Therefore, his proportionate share of contribution should be recalculated as if the Waxmans did not participate.

Handmacher contested Harris' motion to redetermine his (Handmacher's) contribution. He argued: (1) the court's August 19, 1987, order was a settlement agreement and, therefore, was binding on all parties, and (2) the doctrine of law of the case, or alternatively, equitable estoppel, prevented Harris from seeking a redetermination.

On April 20, 1988, the trial court denied Harris' motion for a redetermination of Philip Handmacher's contribution. The court found that the August 19, 1987, order was not a settlement agreement. Rather, the court established the guidelines which the parties used to calculate their proportionate shares, based on stipulations only as to the dates and amounts of the pertinent obligations. The court also found, however, that the August 19 order contained no contingency for redetermination, and that the Waxmans' affidavit failed to make a *prima facie* showing of insolvency. The court lastly found no just reason to delay the enforcement or appeal of its order. (See 107 Ill. 2d R. 304(a).) Harris appeals from the denial of his motion.

OPINION

I

■ The general principles of contribution that govern between cosureties also govern between coguarantors. (*Golsen v. Brand* (1874), 75 Ill. 148, 150.) If any one or more of a number of coguarantors of a debt is required to pay the whole or any portion of the debt, the coguarantors become liable to contribute their proportionate share of

the amount paid. A court presumes that all coguarantors should contribute equally to the discharge of any liability occurring by reason of the guaranty. Coguarantors that are insolvent are excluded in determining the proportions. This liability to contribute arises not from any contract, but from equitable principles. The presumption that all guarantors should contribute a proportionate share of the amount paid may be rebutted by parol evidence. *McDavid v. McLean* (1903), 202 Ill. 354, 357, 66 N.E. 1075, 1076; see generally Restatement of Restitution §85 (1936).

## II

Harris contends that the trial court's August 19, 1987, order, which determined the amounts of defendants' contribution, was open to revision. We agree. However, we also agree with the trial court that Harris failed to make the requisite showing to warrant the revision.

## A

■ Handmacher again argues that the August 19 order was a settlement agreement. Therefore, the order was conclusive and not subject to revision. The party who relies upon an alleged settlement agreement carries the burden of proving its existence. (*Knoll v. Swanson* (1968), 92 Ill. App. 2d 398, 403, 234 N.E.2d 543, 546.) In the instant case, the record shows that the parties stipulated only to the dates and amounts of the pertinent obligations. It was the trial court that established the guidelines, based on which the parties calculated their proportionate shares. We conclude that Handmacher failed to carry his burden of proving the existence of the settlement agreement.

Additionally, the August 19 order contained no findings pursuant to Supreme Court Rule 304(a). (107 Ill. 2d R. 304(a).) The rule allows appeals to be taken from judgment as to fewer than all of the parties or claims in a lawsuit if the trial court expressly finds that there is no just reason for delaying the appeal. Further, in the absence of this special finding, such a judgment is not enforceable or appealable and is subject to revision prior to the entry of a judgment adjudicating all of the claims of all of the parties. (107 Ill. 2d R. 304(a).) Our courts have applied Rule 304(a) to multicount complaints as follows:

> "[W]here a judgment is entered for plaintiffs on one or more but fewer than all the counts in a multicount complaint, but the judgment does not dispose of the other counts, the judgment is not appealable in the absence of an express certification by the

trial court that there is no just reason for delaying appeal. [Citation.] Such judgments are, by operation of Rule 304(a), subject to revision before entry of a judgment that does in fact adjudicate all the claims and liabilities of the parties." *Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 120, 382 N.E.2d 1217. 1219-20.

In the instant case, Harris filed a two-count complaint. The August 19, 1987, order adjudicated only count I. Because the order neither disposed of count II, nor contained Rule 304(a) findings, it was not enforceable or appealable and was subject to revision prior to the entry of a judgment resolving all of the claims of all of the parties.

## B

■■ Beyond contending that the August 19, 1987, order was open to revision, Harris further contends that the trial court should have revised that order. He argues that he presented sufficient evidence to warrant a redetermination, that evidence being the Waxmans' affidavit wherein they attest to their insolvency.

As we concluded earlier, the August 19 order was subject to revision prior to entry of a judgment that adjudicated all of the claims of all of the parties. (107 Ill. 2d R. 304(a).) The trial court exercises this power in its sound discretion. (23 Ill. L. & Prac. *Judgments* §171 (1979).) Whether to allow affidavits to be filed after a summary judgment hearing, on a motion to vacate or modify, also rests in the sound discretion of the trial court. (*Schierer v. Ameritex Division, United Merchants & Manufacturers, Inc.* (1980), 81 Ill. App. 3d 90, 95, 400 N.E.2d 1072, 1076; *Winger v. Richards-Wilcox Manufacturing Co.* (1961), 33 Ill. App. 2d 115, 121, 178 N.E.2d 659, 662.) Harris argues that the Waxmans' affidavit established a *prima facie* case of their insolvency, which was sufficient to warrant a redetermination of the August 19 order.

We disagree. The Waxmans' affidavit states only that their liabilities exceed their assets. The affidavit listed their assets as $3,000 in the bank; Irving's 50% stock interest in an Illinois corporation, which he appraised at approximately $5,000; and their Highland Park home, appraised at $285,000—totalling $293,000. The affidavit lists their liabilities as $35,000 in debts to creditors, $9,000 in credit card debt, a $250,000 mortgage debt, and the $67,342 judgment against him for contribution to Harris—totalling $361,342. However, the affidavit is silent on the repayment terms, installments, and conditions of the various debts, and the dates when the debts were undertaken.

The trial court concluded that the Waxmans' averments were in-

sufficient to show insolvency: the inability to meet debts as they become due. The trial court reasoned that a contrary conclusion would permit parties to escape liability for making contribution, after the judgment, by incurring large consumer debt or similar self-serving conduct. The trial court was well within its discretion in finding that Harris failed to present sufficient evidence warranting a redetermination of the August 19, 1987, order.

### III

We note that the Handmachers bring a cross-appeal, in the event that we reverse the trial court and order a redetermination of defendants' contribution. In their cross-appeal, the Handmachers argue that Philip should not have been held liable to make contribution to Harris at all. We agree with the Handmachers that since we uphold the trial court's denial of Harris' motion to redetermine, we need not reach the cross-appeal.

For the foregoing reasons, the order of the circuit court of Cook County, which denied Harris' motion to redetermine the August 19, 1987, order, is affirmed.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.