JUNE BRISKIN, Petitioner-Appellee, *v.* OGDEN-KILDARE BUILDING CORPORATION *et al.,* Defendants-Appellants.

(No. 54421; ▮▮▮▮▮▮▮▮▮▮▮)

First District—April 15, 1971.

*Rehearing denied May 4, 1971.*

Russell J. Topper and Paul Freeman, both of Chicago, for appellants.

Ruskin & Rosenbaum, of Chicago, (Harry H. Ruskin and Margaret L. Bogot, of counsel,) for appellee.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

The first count of a two count petition filed by June Briskin (petitioner) sought a writ a *mandamus* commanding the defendants Ogden-Kildare Building Corporation (Ogden-Kildare) and Alice Kaplan and Sophye Briskin, directors of, and respectively, the president and the secretary of Ogden-Kildare, to produce the books and records of Ogden-Kildare for specified past years for examination by petitioner's attorneys and accountants. In the second count petitioner sought the statutory penalty against the defendants for their allegedly wrongful refusal to comply with her earlier demand that she be allowed to inspect the books and records, pursuant to Section 45 of the Illinois Business Corporation Act. (Ill. Rev. Stat. 1969, ch. 32, par. 157.45.) The *mandamus* cause was tried before a jury and a verdict was returned for the petitioner. Judgment was entered on the verdict, the trial court directing the issuance of a writ of *mandamus* against the defendants from which they prosecute this appeal. The court found that there was no just reason to delay enforcement or appeal from the judgment on Count One.

Ogden-Kildare was organized by its founder, Max Briskin, for the purpose of acquiring and holding title to real property to house the facilities of the expanding Briskin Manufacturing Company, a family-owned corporation dealing in sheet metal fabrication and metal stamping. Max Briskin, owner of all of the common stock of Ogden-Kildare, declared his intention to make a gift of all of that stock to his children and their respective spouses, and in December of 1952, and January and February of 1953 he carried out his declared intention. As a result, petitioner, who was the wife of Max Briskin's son, Moray Briskin, received a total of 172 shares of Ogden-Kildare common stock. Defendants Alice Kaplan and Sophye Briskin, the daughter and the daughter-in-law of Max Briskin, respectively, received identical numbers of shares as the petitioner, as did the other Briskin children and their respective spouses. All of the common stock of the Ogden-Kildare company was thus held by members of the immediate Briskin family.

At the time of the formation of Ogden-Kildare, and continuing to the

date of the filing of the instant petition, petitioner was an officer and a director of the company. From 1952 until the date of her husband Moray's death in 1960, petitioner participated in the stockholders and directors meetings of the company. After the death of her husband, petitioner moved to Florida and then to New Jersey, where she subsequently remarried. Max Briskin, the Ogden-Kildare founder, died in 1959.

It appears from the record that no written notices of meetings were sent to the petitioner or to her husband before his death, and also that none of the stockholders was ever paid dividends. It further appears that the meetings of the directors and stockholders were held at the home of Max Briskin prior to his death, and afterward at the home of his widow or the home of one of the Briskin children. There was evidence adduced by the defendants that, at the time that Max Briskin divided his Ogden-Kildare stock among his children and their spouses, he requested that no salaries be paid to the company officers or dividends to the stockholders, but that the profits of the company be put back into the company; petitioner testified that she did not recall such request having been made by Max Briskin or any of her co-stockholders. There is further evidence that petitioner received no information concerning the company's financial condition, or the like, since the year 1965. As to the size or number of the Ogden-Kildare corporate books and records, one defense witness testified that "if you spread them out one by one, they might take up the entire area of your desk here [the trial judge's bench]."

In 1962, petitioner engaged an attorney to represent her in the examination of the books and records of Ogden-Kildare for the alleged purpose of determining the value of her stock in anticipation of a sale of the stock, but that its value was not determined because she subsequently decided not to sell the stock. After her examination of the books and records had been made, a loan from the Ogden-Kildare company to another unnamed company was repaid.

On July 27, 1967, petitioner, through her attorneys, made a written demand upon the defendants to allow her attorneys and agents to examine and make abstracts of the minutes of all proceedings of the shareholders and directors meetings of Ogden-Kildare since its foundation, to examine specified records of the company from January 1, 1960, to the date of the demand, and to examine the stock transfer books and the record of shareholders of the company. The demand stated that the purposes of the examination to be:

"* * * to enable me to ascertain the value of my shares of stock in the corporation, to secure information as to the financial condition

of the corporation, its management and the conduct of its affairs and to enable me to communicate with other shareholders of the corporation respecting the affairs of the corporation."

The demand was refused and this action followed.

In the petition seeking the writ of *mandamus,* petitioner alleged that her purpose in demanding the examination and in requesting the *mandamus* was that set forth in her demand of July 27, 1967. Defendants in their answer denied the petitioner's allegation in that respect and alleged that her demand was made without good and proper purpose and not in good faith. It was further affirmatively alleged in defendants' supplemental pleadings that petitioner knew the value of her stock through negotiations between her and the executor of her deceased husband's estate which owned her deceased husband's shares of the Ogden-Kildare stock, and that petitioner's true purposes in seeking the examination were one or more of the following:

"(a) to harass and oppress the Briskins to unending and costly litigation;

(b) to compel by this lawsuit and prior lawsuits the purchase of her Ogden common stock;

(c) to gather corporate financial materials once again for the improper purpose of commencing more and more baseless and malicious litigation; and

(d) to enter and advance upon a general fishing expedition into the corporate books and records."

At the trial of the cause petitioner testified that her purposes in seeking to examine the books and records of Ogden-Kildare were those set forth in her demand of July 27, 1967. In addition she stated that she wanted to determine if the company was being operated profitably and, if so, why she was not receiving dividends. She also wanted to know if any shareholder meetings were held and if the company was acquiring any more properties or making any loans. Petitioner further testified that she was revising her will and establishing an estate planning program and "I wanted to know the values of my shares of the stock so that I would know how much cash my estate might need in the event of my death to pay whatever expenses and taxes. [sic]"

During the trial the defendants were permitted by the trial court to question the petitioner in the presence of the jury concerning certain legal actions in which she was involved with these defendants and other members of the Briskin family, but the court refused to allow the specific titles of these actions to be elicited or to allow documents relating to those actions to be entered into evidence. Defendants' offer of proof outside the presence of the jury related that the evidence of those

other actions bore directly upon petitioner's true motive for the filing of the instant action.

■■ Section 45 of the Illinois Business Corporation Act gives a stockholder in a corporation, who otherwise qualified under the provisions of the statute, the right to examine "in person, or by agent or attorney, at any reasonable time or times, for any proper purpose, its books and records of account, minutes and record of shareholders and to make extracts therefrom." (Ill. Rev. Stat. 1969, chap. 32, par. 157.45.) The Illinois Supreme Court has determined the clause "for any proper purpose" to include "honest motive" and "good faith." *Sawers v. American Phenolic Corporation*, 404 Ill. 440; *Morris v. The Broadview, Inc.*, 385 Ill. 228; *Doggett v. North American Life Ins. Co.*, 396 Ill. 354.

In the *Sawers* case, the Supreme Court stated, at page 449:

"The proper purpose required by the statute, then, is one wherein a stockholder seeks information bearing upon the protection of his interest and that of other stockholders in the corporation."

The Court reversed a judgment for the petitioner therein on the grounds that the petitioner failed to show a proper purpose and that the evidence revealed only that he was seeking to gratify his curiosity or to obtain the stockholders list for speculative purposes.

■■ Further, it may be shown by those upon whom the demand to examine is made that the petitioner's purpose for seeking the examination is not a proper one. In the *Doggett* case, the Court stated that the petitioner's evidence of proper purpose, vis-a-vis the defendants' evidence of petitioner's lack of good faith, was a question to be resolved by the trier of fact. *Doggett v. North American Life Ins. Co.*, 396 Ill. 354, 357.

■■ It cannot be seriously disputed that Ogden-Kildare was a so-called "close corporation." Max Briskin founded the company, initially owned all the shares of common stock of the company, and later divided all those shares between his children and their spouses. As the Supreme Court stated in *Galler v. Galler*, 32 Ill.2d 16, at page 27:

"[A] close corporation is one in which the stock is held in a few hands, or in a few families, and wherein it is not at all, or only rarely, dealt in by buying or selling."

In the instant case defendants raised the defense that the petitioner's purpose in seeking an inspection of the books and records of Ogden-Kildare was not such as alleged in her petition; on the contrary, defendants alleged that her demand was made not for a proper purpose and not in good faith. Ogden-Kildare is a close corporation; evidence of a family dispute, if any, arising between petitioner and other members of the Briskin family after the death of Max Briskin or of Moray

Briskin, which may have been reflected by the other legal actions involving the petitioner and the Briskin family and which reflected upon petitioner's motive and purpose, tending to prove the defendants' allegation in this regard, should have been allowed to be heard by the jury. It was error for the trial court to have refused as evidence the defendants' offer of the other legal actions involving the petitioner and the other members of the Briskin family.

■■ In *Vigran v. Hamilton*, 321 Ill.App. 541, while the question of the admissibility as evidence of the petitioner's prior lawsuits against the defendants was not specifically in issue, the court nonetheless did give great weight to the fact of the filing of the lawsuits in passing upon the petitioner's motive in making the demand for the company's books and records. Likewise in the instant matter, the jury should have been allowed to consider petitioner's involvement in the other actions in connection with the defendants' allegation of harassment, and the like, on her part as being her true purpose in demanding the books and records of Ogden-Kildare.

In the event there will be a retrial of this matter on remand, the question raised by defendants concerning the instructions given to the jury must be considered.

Defendants contend that Petitioner's Instructions Numbers 8 and 9, given to the jury over defendants' objections, were erroneous in that they charged the jury that petitioner need only prove "proper purpose," but omitted the charges that petitioner should also prove "good faith" and "honest motive."

■■ As noted above, Section 45 of the Illinois Business Corporation Act requires that a stockholder show "proper purpose" in demanding the books and records of a company in which he has an interest. The Supreme Court, however, has interpreted "proper purpose" as including "honest motive" and "good faith." (*Sawers v. American Phenolic Corporation*, 404 Ill. 440; *Morris v. The Broadview, Inc.*, 385 Ill. 228; *Doggett v. North American Life Ins. Co.*, 396 Ill. 354.) While the inclusion of the charges that petitioner's proofs must include evidence of "honest motive" and "good faith," as well as "proper purpose," would have aided and enlightened the jury in determining whether petitioner did prove "proper purpose," failure to include those two charges in the instructions was not, of itself, reversible error.

The further contention raised by the defendants on appeal, namely, that petitioner's counsel improperly argued to the jury that the burden of proof rest with the defendants to show improper purpose, bad faith, and dishonest motive on the part of the petitioner, is not well taken. A reading of petitioner's counsel's arguments in that regard clearly show

that he was referring only to the defendants' answering pleadings and to what the defendants claimed therein. The other remarks made by petitioner's counsel were in response to defendants' counsel's statements concerning the proofs in the case. No error was committed in this regard.

For these reasons the judgment is reversed and the cause is remanded with directions to proceed in a manner not inconsistent with the views expressed.

Judgment reversed and cause remanded.

LYONS and GOLDBERG, JJ., concur.