NATIONAL CONSUMERS UNION *et al.*, Petitioners-Appellants, *v.* NATIONAL TEA COMPANY *et al.*, Respondents-Appellees.

(No. 56692;

First District (5th Division)—August 3, 1973.

Laurence A. Berg and Steven Franklin Schwab, both of Chicago, for appellants.

Samuel A. Haubold and Tefft W. Smith, of Chicago, (Kirkland & Ellis, of counsel,) for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs Jan Schakowsky and the National Consumers Union (N.C.U.) shareholders of defendant National Tea Company (National), filed a verified amended petition for a writ of mandamus to compel defendant National and defendant William Lederer, who had charge of National's books and records, to permit them to examine those documents. Following defendants' answer, both parties filed motions for summary judgments. The trial court after hearing arguments of counsel denied plaintiffs' motion and granted defendants' motion.

On appeal plaintiffs contend: (1) that the trial court erred in holding that N.C.U. had no right of its own to examine National's books and records, (2) that both plaintiffs showed a proper purpose for examining National's books and records, (3) that both plaintiffs complied with the statutory requirements for examining National's books and records, and (4) that plaintiffs cannot be penalized for exercising their constitutional rights to picket and boycott National.

The complaint which was verified by Schakowsky, alleged that Schakowsky was the owner of one share of National Tea Co. stock for a period of more than six months, that N.C.U. was the owner of one share of stock for a period of less than six months, that plaintiffs desire to examine the minutes of the board of directors and shareholders meetings, the books and records of account, the current by-laws, and the list of stockholders in the possession of defendant Lederer, and that although plaintiffs had made demands, defendant unjustifiably refused to permit plaintiffs to examine those records. Plaintiffs further alleged that their demands were made at a reasonable time, in a reasonable manner, in good faith, and for a proper and lawful purpose. In addition, plaintiffs filed a memorandum of law in support of their position and attached several letters from N.C.U. to National Tea Co. or its representatives to it. A letter dated March 18, 1971, requested general information regarding the date and location of National's annual meeting.

A lengthy letter dated March 26, 1971, requested that National include five proposals in its proxy statement. A letter dated April 1, 1971, re-questioned permission to examine National's current by-laws and if time permitted to examine the shareholders list. A letter dated April 6, 1971, complained that Mrs. Kendall and Mrs. Heidt, members of N.C.U.'s board of directors, were not permitted to examine the by-laws and share-holders list as requested in the letter of April 1, 1971, and further re-quested permission to examine the minutes of National's board of di-rectors and shareholders meeting and to examine the current articles of incorporation. The heading on all these letters gave N.C.U.'s name and address and were signed by N.C.U.'s president, Lynne Heidt, in her corporate capacity. Schakowsky's name was mentioned in the closing of the March 26 letter as a member of N.C.U.'s board of directors and was mentioned in the body of the April 1 letter as one of the persons re-questing to examine National's by-laws and shareholders list. Schakowsky signed no written demand in her own behalf.

Defendants took a discovery deposition of Schakowsky which indi-cated that she was a member of N.C.U.'s board of directors. She testified that N.C.U. had picketed National's stores, had distributed leaflets and other materials opposing National's policies, had urged shoppers not to buy products at National, and had undertaken other actions, in which she had participated, in order to "sensitize" National to N.C.U.'s brand of "consumer" demands. Although she testified that N.C.U. wished to solicit proxies in support of various of its proposals regarding "sensitiz-ing" management, she also stated that she wanted a basic orientation to National's business and to determine the amount of legal fees National was paying. Defendants then filed a verified answer to the complaint admitting receipt of letters from N.C.U. but denying that plaintiffs met the requirements of section 45 of the Business Corporation Act. (Ill. Rev. Stat. 1971, ch. 32, sec. 157.45.) Defendants also filed a memorandum of law, which quoted relevant parts of the deposition, in support of their position that plaintiffs expressed no proper purpose for inspecting the documents they wished to examine.

Both parties then filed motions for summary judgment stating that no issues of material fact existed. Plaintiff attached no affidavits or other documents to their motion. Defendants' motion for summary judgment was patterned after their memorandum of law, quoted relevant portions of the deposition, and attached various deposition exhibits.

The trial court analyzed the rights of plaintiffs separately. After de-termining that N.C.U. was not entitled to examine National's books and records in its own right, the trial court determined that Schakowsky's purpose was the only evidence relevant to the motions. In this regard

the trial court, considering the deposition of Jan Schakowsky and citing *Sawers v. American Phenolic Corp.* (1949), 404 Ill. 440, 89 N.E.2d 374, determined that plaintiff having the burden of proof, had "failed to submit proof of any purpose other than a speculative purpose at best" and entered an order denying plaintiffs' motion and granting defendants' motion for summary judgment.

*Opinion*

■■■ Plaintiffs first contend that the trial court erred in holding that N.C.U. had no right of its own to examine defendant's books and records. Section 45 of the Business Corporation Act (Ill. Rev. Stat. 1971, ch. 32, sec. 157.45) gives shareholders the right to examine a corporation's books and records of account, its minutes, and its record of shareholders, if they hold their shares of record for at least six months preceding their demand or if they hold at least five per cent of the corporation's outstanding shares. Furthermore, the books and records must be examined at a reasonable time and for a proper purpose. Shareholders may examine the books and records in person or through an agent or attorney. Section 45 also gives courts of competent jurisdiction discretion, upon a showing of proper purpose, to compel a corporation to allow shareholders, who do not otherwise meet the requirements of the section, to examine the books and records. Since the complaint does not allege that N.C.U. held its single share of stock for more than six months, it is clear that it had no right of its own to examine defendant's books and records.

■■ The claim then made by both plaintiffs is that they showed a proper purpose for examining National's books and records, namely— to solicit proxies and that the court abused its discretion in denying them this right. We recognize that soliciting proxies is a proper purpose for examining shareholders lists and for examining a corporation's books and records. (*E.g., Hohman v. Illinois-Iowa Power Co.* (1940), 305 Ill.App. 17, 26 N.E.2d 420.) We also agree with plaintiffs and the trial court that a single proper purpose is sufficient to satisfy the requirements of the statute. However, we also recognize that shareholders no longer have an absolute right to examine shareholders lists or corporate books and records. Now, the rights of minority stockholders must be balanced with the needs of the corporation upon the facts of each case. In *Briskin v. Briskin Mfg. Co.* (1972), 6 Ill.App.3d 740, 286 N.E.2d 571, we determined that the facts of the case required the corporation to permit the shareholders to examine its books and records. In *Sawers v. American Phenolic Corp.* (1949), 404 Ill. 440, 89 N.E.2d 374, the Illinois Supreme Court determined that the shareholders had only a speculative purpose and was therefore not entitled to examine the books and records.

■■ In the instant case, the trial court determined that the evidence before it showed that plaintiffs had a speculative purpose at best. Although plaintiffs assert that they wanted to examine the books and records because they desired to solicit proxies, the evidence clearly showed that N.C.U. and Schakowsky had actually engaged in a course of conduct inimical to National's interests. Schakowsky admitted that they had urged shoppers not to frequent National's stores. On the basis of single shares of stock plaintiffs desire to go on a fishing expedition through National's books and records apparently searching for further ammunition to "sensitize" National to N.C.U.'s brand of "consumer" demands. Numerous cases, including *Sawers v. American Phenolic Corp.* (1949), 404 Ill. 440, 89 N.E.2d 374, relied on by the trial court, indicate that such speculative purposes do not satisfy the requirements of having a proper purpose. On these facts we cannot say that the trial court erred in holding that plaintiffs had no proper purpose for examining National's books. Furthermore, although plaintiffs contend that they satisfied the statutory requirements for examining National's books, it is clear that they cannot satisfy those requirements without having a proper purpose.

Plaintiffs lastly contend that they cannot be penalized for exercising their constitutional right to picket and boycott National. Plaintiffs may picket for any purpose they themselves deem proper and are protected by the first amendment. However, the statute limits their ability to examine books and records of a corporation to a proper purpose within the meaning of the statute. The trial court may consider relevant matters which reflect upon that purpose. We do not believe plaintiffs have been penalized for exercising their constitutional rights.

Therefore, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DRUCKER, P. J., and STAMOS, J., concur.