JOHN WEIGEL, Plaintiff-Appellant, *v.* J. W. O'CONNOR *et al.*, Defendants-Appellees.

First District (4th Division)    No. 76-1705

Opinion filed January 19, 1978.—Rehearing denied March 9, 1978.

1020

Edward Slovick, James S. Gordon, and Michael A. Rosenhouse, all of Chicago, for appellant.

Gottlieb and Schwartz, of Chicago, for appellees.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiff, John Weigel, a shareholder in the defendant corporation, Weigel Broadcasting Company, filed a complaint seeking the issuance of a writ of mandamus to compel the defendant corporation and the defendant corporate officers to produce certain corporate books and records for examination. Plaintiff also sought assessment against the defendants of the statutory penalty for the refusal of the defendants to allow the examination. (Ill. Rev. Stat. 1975, ch. 32, par. 157.45.) The trial court entered judgment ordering the defendants to produce for inspection certain of the corporate documents listed in the complaint and

dismissed plaintiff's demand for the remaining books and records, the court finding that as to the latter, plaintiff had failed to establish a proper purpose for their examination. No statutory penalty was assessed by the trial court.

On appeal, plaintiff contends that the trial court erred in refusing to compel the inspection of all the documents demanded because: (1) the plaintiff had established a proper purpose for examining all documents requested; and (2) once a proper purpose had been established the court could not properly limit the documents which were subject to inspection. Plaintiff appeals from that portion of the judgment which denies the inspection of certain corporate documents, books and records and from the subsequent denial of his motions to vacate the court's judgment and to compel further production of the remaining corporate documents, books and records. Plaintiff also appeals the trial court's denial of an award of a penalty against defendants as provided by the Illinois Business Corporation Act. Ill. Rev. Stat. 1975, ch. 32, par. 157.45.

We agree with the contentions of the plaintiff as to his right to the examination of the additional corporate documents, books and records and, accordingly, reverse the trial court. We remand for implementation of our decision and, further, for a hearing on the claim of plaintiff for a penalty award against the defendants.

Weigel Broadcasting Company, which operates Station WCIU, television Channel 26 in Chicago, was organized by the plaintiff in 1962. The corporation's capital stock consists of 181,669 shares of common stock and 4,588 shares of cumulative preferred stock owned of record by approximately 350 persons. Until 1966 the plaintiff held a controlling interest in the corporation. Currently, he is the owner of record of 16,150 shares, or approximately 9 percent, of the common stock. Defendants O'Connor, Shapiro and Weisberg are chairman of the board, president and secretary of the corporation, respectively. O'Connor and Shapiro hold more than two-thirds of the outstanding common shares. They acquired their controlling interest in 1966 by buying stock from plaintiff and from the plaintiff's former wife, she having received certain of the stock from the plaintiff as a result of a marital settlement. Defendants O'Connor and Shapiro are also the principal holders of the corporation's cumulative preferred shares, on which dividends first were paid in 1975. No dividend has ever been declared or paid on the common stock held by plaintiff and the other shareholders.

In a letter dated July 22, 1975, plaintiff, through his attorney, made a formal demand to inspect specific corporate books and records. The documents requested concerned corporate activities for various time periods from 1966 through 1975, and included: television logs; contracts with advertisers; invoices issued to advertisers; cash receipt journals; cash

disbursement journals; all records evidencing due bills or trade-outs received by or issued to the company; documents reflecting fees paid in connection with sales of broadcast time; documents reflecting loans by the company to individuals; minutes of director and shareholder meetings; all reports filed by the corporation with the Federal Communication Commission; records of all work ordered from and performed by the corporation for C.E.T., Inc., and records of payment for such work; records of all gifts or gratuities given by the corporation; and a current list of all shareholders.

The demand stated the following purposes for which the plaintiff desired to examine the enumerated books and records: to ascertain the value of his shares and determine the true financial condition of the corporation; to determine the nature and amount of corporate expenses; to determine the source of corporate revenues; to determine the amount and kind of compensation paid to corporate officers and directors; to determine what amount of broadcasting time had been given as trade-outs; to communicate with other minority shareholders; and to allow informed voting by minority shareholders at future meetings.

The defendants admit receipt of the plaintiff's demand letter but had not responded to the demand as of the time plaintiff filed his complaint for a writ of mandamus on August 15, 1975. In the first count of that complaint, plaintiff sought to compel the defendants to produce for examination by the plaintiff or his agent or attorney the corporate books and records listed in the demand letter. In the second count, plaintiff sought the statutory penalty for defendants' allegedly wrongful refusal to comply with the plaintiff's demand asserting that said relief is available to him pursuant to section 45 of the Illinois Business Corporation Act. Ill. Rev. Stat. 1975, ch. 32, par. 157.45.

The defendants answered and affirmatively alleged that the demand for inspection and examination was made in bad faith and against the best interests of the corporation. A counterclaim, filed by defendants against the plaintiff based on charges of defamation, was severed from the mandamus action and remains pending in the Law Division of the Circuit Court of Cook County.

At trial the plaintiff testified that as organizer of the corporation he induced many of his personal friends and business associates to purchase some of the corporate common stock. He continues to maintain personal contact with these friends and business associates. Prior to the demand in issue, plaintiff previously had requested and received other information from the defendants. In 1970, plaintiff made a request to examine books and records of the corporation and had been allowed to review a partial payroll ledger. Plaintiff indicated that in 1974 he received a shareholder list and was shown the corporate minute book. He also reviewed the

F.C.C. public file. Defendants admit that they had previously allowed the plaintiff to examine certain of the corporation's books and on occasion had afforded plaintiff the opportunity to examine more of the corporate records than he had specifically requested.

Plaintiff testified that he had been told by corporate employees of several incidents of alleged misconduct and mismanagement on the part of the corporate officers. He was particularly concerned that trade-outs and kickbacks had been employed to divert corporate profits for personal use by the officers of the corporation. A trade-out is the sale of advertising time in return for goods or services rather than cash. Plaintiff admitted that trade-outs are not uncommon in the broadcasting industry, but said he feared the possible use of products or services by employees without compensation to the corporation. He stated that he had heard from corporate employees that vacation trip trade-outs had been taken by corporate officers, their friends and relatives. When questioned about trade-outs in a private conversation at the 1974 annual shareholders' meeting, O'Connor admitted that he had taken trips paid for in the form of trade-outs.

Plaintiff also testified that inside sources had told him that regular thousand-dollar kickbacks had been paid to an advertising agent named Foristal. A kickback involves the payment of money to an advertising agent to induce the agent to buy additional advertising time. One reported incident involved the deposit of a television set in an airport locker and the subsequent delivery of the locker key to Foristal. In addition, plaintiff stated that he had been told by the station's former art director that C.E.T., Inc., of which defendant Shapiro is president, had not been charged for art work which had been done on its behalf.

Plaintiff testified that when he questioned Shapiro and O'Connor at the annual shareholders' meetings about these incidents he received inadequate responses. Plaintiff admitted making a statement at the 1974 annual shareholders' meeting accusing Shapiro and O'Connor of "greed." He followed this statement with two letters of similar substance to the shareholders. Plaintiff accused O'Connor of reneging on a promise to retain him as president of the corporation for a year following plaintiff's sale of stock to the defendants. He also admitted that he had written a letter to the F.C.C. in 1970, stating that he was preparing a petition asking that the station's license renewal be denied. Plaintiff wrote to the F.C.C. after he allegedly was denied access to the station's public file which is required by rule to be available to the public during business hours. No petition or retraction was ever filed with the F.C.C., although plaintiff was later allowed to see some of the documents.

At the close of the plaintiff's case, the defendants offered to produce a number of the documents requested in plaintiff's demand letter,

including: files pertaining to the receipt and disposition of trade-outs; ledger sheets evidencing loans; documents reflecting all commissions, fees, gifts or gratuities paid to Joseph Foristal; minutes of meetings of directors and shareholders; annual financial reports; ledger sheets reflecting all art work rendered for C.E.T., Inc.; and a shareholder list.

This offer was rejected by plaintiff. Then, on defendants' motion and without further evidence being presented by the defendants, the court entered a judgment, in part directing the defendants to produce for inspection those documents which at the end of the plaintiff's case they had offered to produce, and a finding, as to all other documents demanded, that plaintiff was not entitled to inspection since he had failed to establish a proper purpose. As to plaintiff's request to examine those additional documents, the case was dismissed. No penalty was awarded to plaintiff.

After plaintiff's motion to vacate the judgment order was denied, the defendants, pursuant to the judgment order, made available for inspection by the plaintiff a number of corporate documents. Plaintiff, thereafter, filed a motion to compel production of certain corporate records claiming that defendants, in violation of the judgment order, had failed to make available all files pertaining to the receipt and disposition of all trade-outs for the years in question. In response to this motion, defendant Shapiro filed an affidavit in which he asserted that the defendants had fully complied with the court's judgment order and plaintiff's motion was denied.

Thereupon, plaintiff appealed.

OPINION

Plaintiff contends that the trial court erred in refusing to order the defendants to produce for inspection all the documents requested. Plaintiff further contends that the trial court necessarily found that a proper purpose had been shown because the judgment directs the defendants to produce some, although not all, of the books and records demanded; and, therefore, it was improper to selectively choose the documents which plaintiff was entitled to inspect.

■■ ■ Section 45 of the Illinois Business Corporation Act gives a stockholder in a corporation, who otherwise qualifies under the provisions of the statute, the right to examine "in person, or by agent or attorney, at any reasonable time or times, for any proper purpose, its books and records of account, minutes and record of shareholders and to make extracts therefrom." (Ill. Rev. Stat. 1975, ch. 32, par 157.45.) The Illinois Supreme Court has interpreted the phrase "for any proper purpose" to include "honest motive" and "good faith." (See *Sawers v. American Phenolic Corp.* (1949), 404 Ill. 440, 89 N.E.2d 374; *Doggett v. North*

*American Life Insurance Co.* (1947), 396 Ill. 354, 71 N.E.2d 686; *Morris v. Broadview, Inc.* (1944), 385 Ill. 228, 52 N.E.2d 769.) A proper purpose is one which seeks to protect the interests of the corporation as well as the interests of the shareholder seeking the information. (*Sawers v. American Phenolic Corp.* (1949), 404 Ill. 440, 89 N.E.2d 374.) A shareholder is legitimately entitled to know anything and everything which the records, books and papers of the company would show so as to protect his interest and so long as he has an honest motive and is not proceeding for vexatious or speculative reasons. *Briskin v. Briskin Manufacturing Co.* (1972), 6 Ill. App. 3d 740, 286 N.E.2d 571.

■■ ■ A stockholder must be seeking something more than satisfaction of his curiosity and must not be conducting a general fishing expedition. Proper purpose could be shown by attendance at shareholders' meetings, examination of the books and records of the corporation and from the evidence of an effort on the part of the shareholder to determine the financial situation and the character of management of the corporation. (*Sawers v. American Phenolic Corp.* (1949), 404 Ill. 440, 89 N.E.2d 374.) A shareholder's attempts to determine the financial condition of the corporation through an exchange of correspondence with corporate officers evidences proper purpose even when the shareholder does not attend the shareholders' meetings. (*McCormick v. Statler Hotels Delaware Corp.* (1964), 55 Ill. App. 2d 21, 203 N.E.2d 697.) A desire to learn the reasons for lack of dividends or insubstantial dividends, and suspicion of mismanagement arising from such a dividend policy alone, will constitute a proper purpose. See *Briskin v. Briskin Manufacturing Co.* (1972), 6 Ill. App. 3d 740, 286 N.E.2d 571; *Winger v. Richards-Wilcox Manufacturing Co.* (1961), 33 Ill. App. 2d 115, 178 N.E.2d 659; *Miller v. Spanogle* (1934), 275 Ill. App. 335.

Although the burden of proving good faith and proper purpose rests with the stockholder (*Briskin v. Ogden-Kildare Building Corp.* (1971), 132 Ill. App. 2d 679, 270 N.E.2d 520), proof of actual mismanagement or wrongdoing is not necessary. Good faith fears of mismanagement are sufficient.

■■■ The appellate court will not substitute its judgment for that of the trier of fact, but "[i]t is our duty to review the evidence, and to reverse the judgment of the trial court whenever we find such judgment to be clearly against the manifest weight of the evidence." (*McCoy v. Chicago Transit Authority* (1976), 44 Ill. App. 3d 939, 943-44, 358 N.E.2d 1279, 1282; *Thomas v. Le Burkian* (1973), 10 Ill. App. 3d 742, 744, 295 N.E.2d 313, 314-15.) Applying these principles to the facts in this case we find that the decision of the trial court, in denying access to all the corporate books and records demanded by the plaintiff, is clearly against the manifest weight of the evidence.

In support of the plaintiff's claim of proper purpose the following evidence was adduced at trial. Weigel was the founder and a longtime shareholder in the corporation in which he retained a substantial investment. Although not always in agreement with current management, the plaintiff actively participated in shareholders' meetings and corresponded with other minority shareholders. Weigel's testimony indicated that, based on information received from corporate insiders, he had reason to fear that the financial security of the corporation was being jeopardized by the personal use of trade-outs by corporate officers, the giving of kickbacks to advertising agents and the uncompensated use of corporate property for the benefit of another corporation. In an attempt to verify the insider information the plaintiff unsuccessfully questioned two of the defendant corporate officers. These factors, coupled with the history of the lack of dividend payments, are sufficient indications of proper purpose to support plaintiff's demand.

Defendants contend that the plaintiff's demand is made in bad faith and as part of a campaign of harassment. Citing *National Consumers Union v. National Tea Co.* (1973), 14 Ill. App. 3d 186, 302 N.E.2d 118, the defendants argue that Weigel's course of conduct indicates that his purpose is inimical to the corporation. However, unlike the case under consideration, the plaintiffs in *National* owned single shares of stock in the corporation. One had admittedly urged shoppers not to frequent National's stores and stated that her demand was based on a desire to obtain a basic orientation to National's business through an examination of the corporate records.

■■ Although admittedly there is animosity between the plaintiff and the defendant officers, there is insufficient evidence in the record to indicate that a vexatious purpose motivated the plaintiff's current demand. Prior demands, alone, are not evidence of a vexatious purpose. (*Winger v. Richards-Wilcox Manufacturing Co.* (1961), 33 Ill. App. 2d 115, 178 N.E.2d 659.) Defendants have failed to contradict the record in support of plaintiff's request to examine the documents, books and records of the corporation. In fact, defendants admit that on prior occasions they have willingly allowed the plaintiff to examine the corporate books and records. Their unwillingness to allow him to examine the books and records subject to this demand is, therefore, difficult to understand.

■■■ Even more persuasive of plaintiff's proper purpose is the fact that the trial court entered judgment giving the plaintiff the right to examine a portion of the books and records requested. Although the judgment order does not contain an express finding that as to these particular documents plaintiff proved a proper purpose, a finding of proper purpose is a necessary element in an action to compel inspection

and, thus, is implicit in the court's judgment order. An implied finding of the trial court is entitled to the same weight as a specific finding. (*Stirs, Inc. v. City of Chicago* (1974), 24 Ill. App. 3d 118, 320 N.E.2d 216.) A judgment order must be construed with reference to the issues it was intended to decide and it is not the form of the judgment order which is determinative, but the substance and effect of the adjudication. *Osina v. City of Chicago* (1975), 28 Ill. App. 3d 955, 239 N.E.2d 498.

■■ Defendants urge that their offer of settlement rendered the controversy over the proferred documents moot and, thus, the trial court was not required to make a finding of proper purpose with regard to the examination of these particular books and records. We do not agree. A question is said to be moot when it presents or involves no actual controversy, interest or right, or where the issues involved have ceased to exist. (*Chicago City Bank & Trust Co. v. Board of Education* (1944), 386 Ill. 508, 54 N.E.2d 498; *Hill v. Murphy* (1973), 14 Ill. App. 3d 668, 303 N.E.2d 208.) Defendants' offer to produce less than all of the documents demanded was plainly rejected by the plaintiff. A real and substantial controversy continued to exist between the parties upon which the trial court thereafter ruled.

■■ The trial court, after apparently finding that the evidence was sufficient to show a proper purpose, proceeded to selectively deny the inspection of several of the books and records demanded. We agree with the plaintiff's contention that it is improper to circumscribe a shareholder's right to examine corporate books and records and to allow only piecemeal inspection when the record indicates that the shareholder has presented sufficient evidence of proper purpose and the trial court has so held.

A single proper purpose is sufficient to satisfy the statutory requirement. (*National Consumers Union v. National Tea Co.* (1973), 14 Ill. App. 3d 186, 302 N.E.2d 118.) Once that purpose has been established, the shareholder's right of inspection extends to all books and records necessary to make an intelligent and searching investigation. "[T]he right of a stockholder extends to all books, papers, contracts, minutes, or other instruments from which he can derive any information that will enable him to better protect his interests." (5 Fletcher, Cyclopedia Corporations §2239, at 779 (1976).) The language "books and records" has been construed to extend to contracts and other papers. *Stone v. Kellogg* (1896), 165 Ill. 192, 46 N.E. 222.

■■ A shareholder need not establish a proper purpose in respect to each document he desires to examine; a proper purpose which would entitle him to the right of inspection generally is sufficient. "[I]t is the general rule that the right of inspection is not qualified by the necessity for it; where the right of inspection exists, refusal of it cannot be justified by

proferring him a substitute, or on the ground that he has had the information at the hands of the company, or that it may be obtained from other sources, or that it is not necessary, or that he has recently been allowed inspection." (5 Fletcher, Cyclopedia Corporations §2249, at 803 (1976).) Here, the plaintiff made a specific demand for designated documents, not a blanket demand for all books and records of the corporation, although such omnibus demands have been upheld. *Wise v. H. M. Byllesby & Co.* (1936), 285 Ill. App. 40, 1 N.E.2d 536; *Miller v. Spanogle* (1934), 275 Ill. App. 335.

■■ Plaintiff argues convincingly that all the records included in his demand must be examined together in order to reveal a true picture of the corporate operations. We agree. It is elementary that if corporate mismanagement or the misuse of corporate property exists (and we do not assert that it does exist in this case), it will best be shown by a total examination of all reasonably required books and records of the corporation.

For these reasons, we hold that, under the facts in this case, the plaintiff has established a proper purpose and neither the defendants by their offer of settlement, nor the trial court by way of judgment, can selectively limit the right of inspection once that proper purpose has been established.

■■ Defendants assert that the judgment of the trial court, entered at the end of the plaintiff's case, was a directed finding in favor of the defendants and a determination that the plaintiff had failed to establish a *prima facie* case. (See Ill. Rev. Stat. 1975, ch. 110, par. 64(3).) Defendants argue that the cause, if reversed on appeal, must be remanded to the trial court for the purpose of allowing the defendants to present their defense. However, we believe that the defendants are not entitled to a rehearing on the issue of proper purpose. By requesting the trial court at the end of the plaintiff's case, to enter a judgment which granted plaintiff part of the relief sought, the defendants waived the right to present a defense as to the issue of proper purpose. See *Associates Discount Corp. v. Schwartz* (1952), 347 Ill. App. 74, 105 N.E.2d 792 (abstract).

Plaintiff argues that the trial court erred in failing to award plaintiff the statutory penalty. (Ill. Rev. Stat. 1975, ch. 32, par. 157.45.) Section 45 of the Illinois Business Corporation Act imposes a 10-percent penalty on corporate officers or corporations which wrongfully refuse to allow a shareholder to examine corporate books and records. It also provides that "[i]t shall be a defense to any action for penalties under this section that the person suing therefor has within two years sold or offered for sale any list of shareholders of such corporation or any other corporation or has aided or abetted any person in procuring any list of shareholders for any such purpose, or has improperly used any information secured through

any prior examination of the books and records of account, or minutes, or record of shareholders of such corporation or any other corporation."

■■ In addition to the defenses contained in the statute, it has been held that a trial court may exercise its discretion to reduce the amount of the penalty where it appears that the defendants, in refusing inspection, had been acting in good faith. *McCormick v. Statler Hotels Delaware Corp.* (1964), 55 Ill. App. 2d 21, 203 N.E.2d 697.

■■ In this case the defendants were relieved of presenting a defense to the penalty issue when the trial court denied the penalty at the end of the plaintiff's case. On remand, the defendants must be given the opportunity to present a defense on the issue of penalty.

Because of our disposition of the issues, it is unnecessary to reach a decision as to whether the trial court's denial of the plaintiff's additional motion to compel the production of documents was correct.

Accordingly, we conclude that the cause must be remanded to the trial court with directions to broaden the writ of mandamus to include all books and records requested in the plaintiff's demand, and for the court to conduct a hearing on the issue of the statutory penalty.

Reversed and remanded with directions.

DIERINGER and ROMITI, JJ., concur.