FRANCIS TAGHERT, Plaintiff-Appellee, v. WALTER WESLEY *et al.*, Defendants-Appellants.

First District (5th Division) Nos. 1—01—3554, 1—02—1087, 1—02—1227 cons.

Opinion filed September 30, 2003.

Kiesler & Kanyock, L.L.C., of Chicago (David J. Kiesler and Joshua J. Whiteside, of counsel), for appellants.

Francis Taghert, of Chicago, for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

This is a consolidated appeal. Plaintiff, Francis Taghert, filed a complaint under the Illinois Condominium Property Act (765 ILCS 605/19 (West 2000)) against defendants, Walter Wesley and Nat Ozmon, the president and director of 1440 Lake Shore Condominium Association, respectively, for failure to provide a requested inspection of condominium association financial documents. The trial court ordered defendants to produce the documents for inspection, entered sanctions against defendants, and awarded plaintiff attorney fees and costs. Defendants appeal from the various orders of the circuit court of Cook County denying motions to dismiss and motions to enter judgment on the pleadings, and from sanctions and awards entered against them. We affirm.

BACKGROUND

The record reveals the following relevant facts. Plaintiff, Francis Taghert, is an owner of a condominium unit in 1440 N. Lake Shore Drive, and operated as the 1440 Lake Shore Condominium Association (LSCA). Walter Wesley was president of the board of directors of the LSCA from June 1997 until June 2000. Nat Ozmon has been a board member and vice-president of the board of directors of the LSCA since June 1997.

On August 12, 1999, plaintiff sent a written petition to the LSCA directors requesting certain condominium records from the board, to wit, the "budgetary files of the LSCA finance committee." Wesley responded to plaintiff via letter dated August 27, 1999, that plaintiff could obtain the information requested by attending a meeting of the finance committee.

Thereafter, on August 27, 1999, plaintiff filed a complaint, *pro se,* naming as defendants Wesley and Ozmon, alleging misfeasance in the process of determining special assessments and requesting punitive damages and fees.

In his initial complaint, plaintiff alleged that defendants failed to adhere to the provisions of the declaration of condominium and its bylaws, and to section 19 of the Illinois Condominium Property Act (Condominium Property Act), in making the records of the association available for examination and review. 765 ILCS 605/19 (West 2000). Plaintiff alleged that defendants failed to comply with his requests to review the budgetary files of the LSCA finance committee for the 1999-2000 budget. Plaintiff sought compensatory damages in the amount of $1, and punitive damages in the amount of $3,000, to be distributed to a Chicago charity at the court's direction, and associated court fees.

The trial court permitted plaintiff to amend his complaint four times. In his fourth amended complaint, dated March 19, 2001, plaintiff alleged that the insurer of LSCA, St. Paul Fire and Marine Insurance Company (St. Paul), by and through its manager, Brad Smith, and counsel, Daniel M. Extrom, wrongly failed to pay plaintiff an arbitration award in the amount $400, for attorney fees and $1 for nominal damages, associated with the arbitration of plaintiff's complaint for request for documents.[1] Defendants rejected the arbitration award as their statutory right.

The trial court entered an order on June 1, 2001, denying defendants' April 9, 2001, motion for judgment on the pleadings. The trial court granted in part and denied in part defendants' section 2—615 motion to dismiss plaintiff's fourth amended complaint with prejudice for failing to state a cause of action, striking certain paragraphs of plaintiff's fourth amended complaint.

Plaintiff filed a fifth amended complaint on June 13, 2001, adding counts sounding in conspiracy and misappropriation in connection with defendants' budgetary decisions in 1999-2000. A pretrial settlement conference commenced on July 13, 2001. At the onset of the conference, plaintiff made a settlement demand of $3,001. The trial court restated plaintiff's position as plaintiff having asked the board for information regarding the preparation of the 1999-2000 budget. Defense counsel maintained that plaintiff had never requested this information in his complaint and failed to request records with specificity. At the end of the hearing, the trial court denied defendants' motion to dismiss plaintiff's complaint or to grant judgment in favor of defendants on the pleadings.

On September 24, 2001, a hearing commenced in open court. The trial court inquired of the parties why they had failed to supply plaintiff with the documents he requested, then, *sua sponte*, entered an order compelling defendants' production of the "files of the Finance Committee." On October 1, 2001, defendants advised the court that no such files existed and filed affidavits to that effect. Nevertheless, the trial court entered an order finding defendants in contempt of court and assessed fines in the amount of $500 per day until defendants produced such documents.

On October 9, 2001, plaintiff filed a motion for judgment on the pleadings arguing that, by defendants' statements through counsel in

---

[1]Plaintiff's collateral complaint against St. Paul was previously dismissed by the trial court pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)) after a determination that St. Paul is not a proper party to plaintiff's case.

open court, defendants admitted that the board possessed documents relating to the 1999-2000 budget. Plaintiff alleged a contradiction between defendants' affidavits and the admission of defendants and of defense counsel. Plaintiff asserted that he had a witness, Don Rosenbaum, cochairman of the finance committee during the formation of the 1999-2000 budget, who would testify that condominium budgets were often assembled without working sheets and were based on prior budgets. Plaintiff asserted that Wesley had tampered with the budget and inserted a special assessment without approval of the board, and that Ozmon assented. Plaintiff also cited the following exchange:

"THE COURT: Do you have papers or receipts or anything that were used by the Board condo, its managers etc. in preparing a budget for 99/00?

MR. OZMON: Well, certainly there are papers.

THE COURT: Certainly there are papers.

MR. OZMON: Certainly there are papers, just as your honor said."

On November 16, 2001, the trial court granted plaintiff's motion for judgment on the pleadings. The trial court noted that "Defendant Wesley refused to provide the documents citing the fact that plaintiff failed to make a proper request for the documents." On December 18, 2001, the trial court entered judgment in favor of plaintiff and against defendants in the amount of $2,274.34. Defendants' motions to reconsider these orders were denied on April 4, 2002, and April 17, 2002, respectively.

Defendants filed their timely notices of appeal of the above-described orders of the trial court on October 3, 2001, and April 17, 2002. On October 26, 2001, this court granted defendants' motion to stay the trial court's contempt order, denied waiver of bond, and denied defendants' motion to stay further proceedings in the trial court.

OPINION

■ Initially, defendants contest their standing to be sued under section 19(e) of the Condominium Property Act. Section 19(e) provides that the condominium board is the proper party from which to request documents and from which a complaining party may receive costs and fees. 765 ILCS 605/19(e) (West 2000). Defendants argue that plaintiff incorrectly filed his action against Wesley and Ozmon in their individual capacity and as board members of the LSCA, rather than against the LSCA. Defendants' contention is without merit. The record shows that plaintiff properly filed his complaint against defendants individually and in their capacity as members of the LSCA board of directors. 735 ILCS 5/2—209.1 (West 2002).

Next, defendants contend that the trial court erred in entering various orders denying their motions to dismiss plaintiff's case for failure to state a claim and motions for judgment on the pleadings. Defendants argue that plaintiff failed to comply with the procedures set forth in the Condominium Property Act regarding the inspection of association records. In particular, defendants contend that plaintiff failed to state a "proper purpose" for inspecting condominium documents.

■ Section 19 of the Condominium Property Act provides in pertinent part as follows:

"(a) The board of managers of every association shall keep and maintain the following records, or true and complete copies of these records, at the association's principal office:

\* \* \*

(9) the books and records of account for the association's current and 10 immediately preceding fiscal years, including but not limited to itemized and detailed records of all receipts and expenditures.

\* \* \*

(e) Except as otherwise provided in subsection (g) of this Section, any member of an association shall have the right to inspect, examine, and make copies of the records described in subdivisions (6), (7), (8), and (9) of subsection (a) of this Section, in person or by agent, at any reasonable time or times but only for a proper purpose, at the association's principal office. In order to exercise this right, a member must submit a written request, to the association's board of managers or its authorized agent, stating with particularity the records sought to be examined and a proper purpose for the request. Subject to the provisions of subsection (g) of this Section, failure of an association's board of managers to make available all records so requested within 30 business days of receipt of the member's written request shall be deemed a denial \*\*\*.

In an action to compel examination of records described in subdivisions (6), (7), (8), and (9) of subsection (a) of this Section, the burden of proof is upon the member to establish that the member's request is based on a proper purpose. Any member who prevails in an enforcement action to compel examination of records described in subdivisions (6), (7), (8), and (9) of subsection (a) of this Section shall be entitled to recover reasonable attorney's fees and costs from the association only if the court finds that the board of directors acted in bad faith in denying the member's request." 765 ILCS 605/19 (West 2000).

There is a veritable dearth of case law in the State of Illinois

interpreting section 19 of the Condominium Property Act and its provision directing the inspection of documents.

▇ The Condominium Property Act itself is only 40 years old, first established by law in 1963. The Condominium Property Act originally derived the rights enunciated in section 19, vesting rights of condominium unit owners to inspect the books and records of the association, from the statutory law of corporations.

It has long been established in Illinois that a shareholder in a corporation has the right to examine the records, books and papers of the corporation after stating a "proper purpose." *Stone v. Kellogg*, 165 Ill. 192, 46 N.E. 222 (1896); *Weigel v. O'Connor*, 57 Ill. App. 3d 1017, 373 N.E.2d 421 (1978); *Hagen v. Distributed Solutions, Inc.*, 328 Ill. App. 3d 132, 764 N.E.2d 1141 (2002). A proper purpose is shown when a shareholder has an honest motive, is acting in good faith, and is not proceeding for vexatious or speculative reasons. However, the purpose must be "lawful in character and not contrary to the interests of the corporation." *Sawers v. American Phenolic Corp.*, 404 Ill. 440, 89 N.E.2d 374 (1949). "A proper purpose is one which seeks to protect the interests of the corporation as well as the interests of the shareholder seeking the information." *Weigel*, 57 Ill. App. 3d at 1025.

▇ In *Meyer v. Board of Managers of Harbor House Condominium Ass'n*, 221 Ill. App. 3d 742, 583 N.E.2d 14 (1991), this court addressed a plaintiff unit owner's request to inspect documents under the above-quoted provision of the prior version of the Condominium Property Act. In its prior incarnation, section 19(a) specifically stated that the right of inspection was derived from the General Not For Profit Corporation Act of 1986 (Ill. Rev. Stat. 1989, ch. 32, par. 101.01 *et seq.*), permitting inspection of condominium records by "members of a not-for-profit corporation pursuant to Section 107.75 for the General Not For Profit Corporation Act of 1986." Ill. Rev. Stat. 1989, ch. 30, par. 319(a)(5). Section 107.75 of the General Not For Profit Corporation Act provided in pertinent part as follows:

> "Each corporation shall keep correct and complete books and records of account ***; and shall keep at its registered office or principal office a record giving the names and addresses of its members entitled to vote. All books and records of a corporation may be inspected by any member entitled to vote, or that member's agent or attorney, for any proper purpose at any reasonable time." Ill. Rev. Stat. 1989, ch. 32, par. 107.75.

The *Meyer* court thus examined the rights and burdens of a unit owner in requesting an inspection of records as those of a shareholder making such a request of a corporation. This court held that where a unit owner asserted a good-faith fear of mismanagement of financial mat-

ters by the association, he established a proper purpose to inspect the records of the condominium association's delinquency reports and itemized legal bills. *Meyer*, 221 Ill. App. 3d at 748.

■ In the present case, plaintiff requested an inspection of the records of the finance committee of the LSCA in order to ascertain the expenditures proposed for the 1999-2000 budget year. The record shows that following lengthy proceedings, the trial court determined that plaintiff submitted a request to inspect documents pursuant to section 19, that plaintiff stated a proper purpose in making such a request, and that defendants acted in bad faith in denying plaintiff's request. Defendants' argument that plaintiff's request was inadequate as nonspecific is unfounded. The record shows that both defendants and defense counsel admitted in the trial court that such documents existed and, in fact, were in defendants' possession.

Section 19 is clear as to plaintiff's right to an examination of the books and records of the association. We find that plaintiff has stated a proper purpose for the inspection of the financial documents specifically relating to the preparation of the fiscal year 1999-2000 budget. Under these circumstances we cannot find that the trial court erred in entering judgment in favor of plaintiff and against defendants.

■ Defendants further object to the sanctions rendered against them after the trial court found them in contempt of court. On September 24, 2001, the trial court ordered defendants to produce the requested documents. Defendants refused, and the trial court found defendants in contempt of court and entered sanctions against defendants in the amount of $500 per day until such time that defendants comply with the trial court's order.

The trial court is vested with inherent power to enforce its orders and preserve its dignity by the use of contempt proceedings. *In re Marriage of Bonneau*, 294 Ill. App. 3d 720, 691 N.E.2d 123 (1998). It is within the discretion of the trial court to fashion appropriate remedies for a party's contumacious behavior and this court will not reverse the contempt order of the trial court absent an abuse of such discretion. *Shatkin Investment Corp. v. Connelly*, 128 Ill. App. 3d 518, 470 N.E.2d 1230 (1984). We find no abuse of discretion here.

Finally, defendants object to the award of attorney fees and costs to plaintiff.

■ Although plaintiff appears *pro se* on appeal, and appeared *pro se* for much of his activity at the trial court level, the record shows that plaintiff initially retained an attorney to represent him in his action and incurred attorney fees. The trial court reviewed plaintiff's petition for fees and costs presented by plaintiff and entered an award totaling $2,274.34. Under section 19(e) of the Act, as quoted above,

after a member prevails in an action to compel examination of records, the member is entitled to petition the court for attorney fees. This court has held that where a plaintiff succeeds in an action against a condominium association to compel disclosure of books and records, the plaintiff is entitled to legal fees and the defendant association is not entitled to attorney fees for the defense of such an action. See *Verni v. Imperial Manor of Oak Park Condominium, Inc.*, 99 Ill. App. 3d 1062, 425 N.E.2d 1344 (1981).

An award of attorney fees and costs is within the discretion of the trial court, and absent an abuse of discretion, this court may not reverse such an award. *Kruse v. Kuntz*, 288 Ill. App. 3d 431, 683 N.E.2d 1185 (1996). In the present case, we cannot find that the trial court erred in entering an award in favor of plaintiff for $2,274.34.

We therefore affirm the judgment of the trial court.

Affirmed.

REID and HARTIGAN, JJ., concur.