No. 2--03--1283

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

ROBERT CORWIN, ) Appeal from the Circuit Court

) of Lake County.

Petitioner-Appellee, )

)

v. ) No. 02--MR--1055

)

ABBOTT LABORATORIES, ) Honorable

) Raymond J. McKoski,

Respondent-Appellant. ) Judge, Presiding.

______________________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

Respondent, Abbott Laboratories (Abbott), appeals the trial court's judgment ordering Abbott to produce certain documents for inspection by a shareholder, petitioner, Robert Corwin.  We affirm.

The following facts are taken from the record.  Abbott is a large publically held pharmaceutical company with its principal offices in Lake County, Illinois.  Abbott owned 50% of TAP Pharmaceutical Products, Inc. (TAP) which manufactured and sold a drug called Lupron, a prostate cancer drug.  TAP employees were indicted for the illegal marketing of Lupron.  The federal government alleged that TAP gave doctors free samples of Lupron and then sought reimbursement from government insurers.  On October 3, 2001, TAP announced that it had entered into a settlement, pleading guilty to federal charges and paying $875 million in fines and penalties.  Two days after TAP‛s announcement Corwin filed a shareholder derivative action in federal court.  Shortly after, other shareholders filed similar derivative actions in Cook County.  Corwin voluntarily dismissed his federal lawsuit and joined in the state action.  After Abbott refused Corwin's request for certain documents, Corwin filed a 
mandamus
 action in Lake County seeking to inspect certain Abbott documents pursuant to section 7.75 of the Business Corporation Act of 1983 (Act) (805 ILCS 5/7.75 (West 2002)).  The trial court denied Abbott‛s motions to dismiss and for summary judgment.  After a bench trial, the trial court granted Corwin‛s petition and ordered Abbott to produce the documents sought by Corwin.  This timely appeal followed.

On appeal, Abbott argues that the trial court misconstrued the scope of the term "books and records of account" as contained in section 7.75(b) of the Act (805 ILCS 5/7.75(b) (West 2002)).  Corwin had requested internal investigatory reports and any and all "document[s] received by any" board member of Abbott's relating to the federal investigation of TAP.  Abbott asserts that these documents are not "books and records of account" because they are not financial records.

Pursuant to section 7.75(b) of the Act, a shareholder may obtain access to a corporation's "books and records of account, minutes, voting trust agreements filed with the corporation and record of shareholders."  805 ILCS 5/7.75(b) (West 2002).  The Act does not define "books and records of account."  However, in 
Weigel v. O'Connor
, 57 Ill. App. 3d 1017 (1978), this court held that once a proper purpose has been established, "the shareholder's right [to inspect] extends to 
all
 books and records necessary to make an intelligent and searching investigation" and " 'from which he can derive any information that will enable him to better protect his interests.' "  (Emphasis added.)  
Weigel
, 57 Ill. App. 3d at 1027, quoting 5 Fletcher, Cyclopedia Corporations §2239, at 779 (1976).  The documents at issue in 
Weigel
 included television logs, contracts with advertisers, and reports that the corporation had filed with the Federal Communications Commission (FCC).  The 
Weigel
 court held that "[a] shareholder is legitimately entitled to know anything and everything which the records, books, and papers of the company would show so as to protect his interest."  
Weigel
, 57 Ill. App. 3d at 1025.

Abbott argues that 
Weigel
 is not dispositive in this case because "most of what the shareholder sought in that case were financial records."  Abbott ignores that the shareholder in 
Weigel
 also sought nonfinancial records such as television logs, contracts with advertisers, and reports that the corporation had filed with the FCC.  Accordingly, Abbott's attempt to dilute 
Weigel
's application to this case is not borne out by the facts contained in 
Weigel
.

Abbott also argues that 
Weigel
 was not properly decided because it relied on an 1896 case, 
Stone v. Kellogg
, 165 Ill. 192 (1896), which was decided before a 1933 amendment, changing "records and books of accounts" to"books and records of account."  We believe this is a distinction without a difference.  We also note that the legislature had occasion to clarify its intent in light of the1978 
Weigel
 decision when it amended other provisions of the Act in 1988.  The legislature is presumed to act with knowledge of the prevailing case law in enacting an amendment, and the legislature can amend a statute if it intends a construction different from that given by a court.  See 
People ex rel. Department of Labor v. K. Reinke, Jr., & Co./Reinke Insulation
, 319 Ill. App. 3d 721, 728 (2001). When amending the Act, the legislature let 
Weigel
 stand without changing or clarifying the language at issue.  Accordingly, 
Weigel
 is controlling here.

Abbott also argues that the trial court erred by finding that Corwin had a proper purpose in requesting the documents at issue.  The Act provides that a shareholder may inspect corporate books and records "for a proper purpose."  805 ILCS 5/7.75 (West 2002).  
Taghert v. Wesley
, 343 Ill. App. 3d 1140, 1146 (2003).  A proper purpose is shown when a shareholder has an honest motive, is acting in good faith, and seeks to protect the interests of the corporation.  
Taghert
, 343 Ill. App. 3d at 1146.  Contrary to Abbott's contention, when the trial court‛s findings are based in part on testimony, its findings are reviewed under a manifest weight of the evidence standard and not 
de novo
.  See 
Weigel
, 57 Ill. App. 3d at 1026.

In support of Corwin's claim of a proper purpose, the following evidence was adduced at trial.  Abbott owned 50% of TAP, a pharmaceutical company that was indicted for illegal marketing practices.  Twenty percent of Abbott's revenues were derived from TAP, and Abbott appointed some of the members of TAP's board of directors.  Abbott and TAP worked together in sales and in marketing certain products.  Abbott received immunity for its cooperation in the federal investigation.  TAP pleaded guilty to the federal charge of conspiracy and paid $875 million in fines and penalties.  Corwin testified that he was concerned that Abbott knew of the illegal conduct or was directly involved in the illegal conduct.  After considering this evidence, the trial court found that the evidence was sufficient to show a proper purpose.  The record does not indicate that an opposite conclusion is clearly evident.  Thus, we cannot say that the trial court's finding of a proper purpose is against the manifest weight of the evidence.

Next, Abbott argues that the trial court erred by failing to consider petitioner's motives and to balance the interests of respondent.  Abbott asserts that Corwin's motive was not to protect his investment, but was fueled by his lawyer who was suing Abbott for hundreds of millions of dollars on the same claims made by Corwin.  Abbott argues that Corwin is a professional plaintiff who owns only a tiny amount of Abbott stock.

Abbott's assertions are not supported by the record.  The trial court considered Corwin's motives, as the following comments reveal:

"I cannot find that the purpose was speculative or for curiosity or harassment.  ***  Also, even assuming that filing an action to access corporate records was done in order to use those records in a derivative suit and assuming that that purpose would be improper, that purpose here would be only secondary to the primary purpose.  The primary purpose I found compelling to the facts presented here."

These comments established that the trial court considered Corwin's motives, balanced the interests of the parties, and found that Corwin had a proper purpose.  Because these findings are not against the manifest weight of the evidence, we affirm the trial court's orde
r.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

BYRNE and CALLUM, JJ., concur.