# Illinois Official Reports

## Appellate Court

---

### *Oviedo v. 1270 S. Blue Island Condominium Ass'n*,
### 2014 IL App (1st) 133460

---

| | |
|---|---|
| Appellate Court Caption | LUIS OVIEDO and VMO PROPERTIES, LLC, Plaintiffs-Appellees, v. 1270 S. BLUE ISLAND CONDOMINIUM ASSOCIATION, an Illinois Not-For-Profit Corporation, and MICHELLE OSORIO, Defendants-Appellants. |
| District & No. | First District, Third Division<br>Docket No. 1-13-3460 |
| Filed | August 27, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court erred in granting plaintiffs partial summary judgment on their complaint seeking the inspection of defendant condominium association's records, since plaintiffs failed to satisfy the requirement that their request be made for a proper purpose, and in view of the reversal of the partial summary judgment for plaintiffs, the award of attorney fees to plaintiffs was vacated and the denial of defendants' motion for sanctions under Supreme Court Rule 137 was also vacated; however, the cause was remanded to allow the trial court to reconsider defendants' request for sanctions in light of the questions as to the *bona fides* of plaintiffs' request for inspection. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-5620; the Hon. Franklin U. Valderrama, Judge, presiding. |
| Judgment | Reversed in part and vacated in part; cause remanded. |

Counsel on
Appeal

Law Office of Jeffery M. Hagen, of Chicago (Jeffery M. Hagen, of
counsel), for appellants.

Luis Oviedo, of Chicago, for appellees.

Panel

JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Neville and Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiffs-appellees Luis Oviedo and his wholly owned limited liability company, VMO
Properties, LLC (VMO), filed a six-count complaint against defendants-appellants, 1270 S.
Blue Island Condominium Association (Association) and Michelle Osorio. The complaint
alleged, *inter alia*, breach of fiduciary duty and violations of municipal codes and statutes
related to the inspection of Association records. The parties filed cross-motions for summary
judgment. The circuit court granted, in part, Oviedo and VMO's motion on the two counts
relating to the inspection of Association records. The circuit court also denied the
Association's motion for sanctions and awarded VMO $27,104 in attorney fees and costs.

¶ 2     On appeal, the Association contends that the circuit court erred in granting partial summary
judgment where (1) Oviedo's request was made only after the Association filed a forcible entry
and detainer action against Oviedo and VMO for failure to pay assessments, (2) Oviedo's
request was not to inspect the records but for the Association to produce copies of them,
something that is not required by ordinance or statute, and (3) the Association did not deny
Oviedo's request, but responded by sending copies of scanned bank statements and offering to
make the records available for inspection. The Association also contests the circuit court's
award of attorney fees to VMO. Finally, the Association contends that the circuit court erred in
denying its motion for sanctions where the allegations in the complaint were based on
unsupported and frivolous claims and the lawsuit was retaliatory.

¶ 3     We find that the trial court erred in granting summary judgment in favor of Oviedo and
VMO because Oviedo's demand was neither proper in form nor for a proper purpose. Further,
the Association did not deny Oviedo and VMO the opportunity to inspect the records. We
vacate the award of attorney fees to VMO and also vacate the denial of the Association's
motion for Rule 137 sanctions (Ill. S. Ct. R. 137 (eff. Feb. 1, 1994)). Therefore, we reverse in
part, vacate in part and remand for further proceedings.

¶ 4                                    BACKGROUND

¶ 5     The Association was established to administer a three-unit condominium building located
at 1270 South Blue Island in Chicago. The management of the Association was turned over to

the unit owners by the developer in June 2006. Osorio, the only unit owner to attend the turnover meeting, was elected president.

¶ 6    In March 2007, the first annual meeting was held and was attended by all three unit owners. Although Osorio sent out a notice for an annual meeting in March 2008 and the other two unit owners agreed to the date and time, neither of them attended.

¶ 7    Osorio subsequently sent an email dated March 18, 2008, informing the other two owners of the items she wanted to discuss at the meeting that they failed to attend, including the fact that Oviedo was currently in arrears on the payment of monthly assessments, and asking them to take over the responsibilities of managing the Association. Oviedo, a licensed Illinois attorney, and the other unit owner ignored Osorio's request and she continued to act as president of the Association.

¶ 8    The Association's declaration provides that a board member must be a unit owner who resides on the property. In instances where the unit owner is a corporation or other legal entity other than a natural person, an officer, director or other designated agent of the entity is eligible to be a board member, provided that person resides on the property. In the event that a board member fails to meet these qualifications, his place on the board shall be deemed vacant. In 2006, Osorio was the only unit owner who resided in her unit.

¶ 9    In April 2009, the third unit owner stopped paying assessments and that unit subsequently went into foreclosure. The current owners of the third unit did not purchase the unit until December 2011. Therefore, from April 2009 until December 2011, the Association did not receive monthly assessments for the third unit.

¶ 10    As far back as 2006, Oviedo's payment of assessments was sporadic. When he received notification from Osorio in December 2006 that he was two months in arrears, Oviedo responded that he was unilaterally electing to make quarterly payments because it was more convenient for him. But the record reveals that Oviedo failed to adhere to his self-selected payment schedule.

¶ 11    In August 2007, Oviedo transferred ownership of his unit to VMO, a company that is owned and operated solely by Oviedo. In March 2008, after receiving an email from Osorio detailing the amount he owed in past-due assessments, Oviedo paid the past-due assessments on VMO's unit from August 2007 to March 2008. After that payment, Oviedo did not pay assessments again until 2010. On August 31, 2010, Oviedo was contacted by the Association's counsel regarding his arrearage and nonpayment of assessments. On October 7, Oviedo made a partial payment of $1,200, leaving a balance due in excess of $4,000 for past-due assessments from April 2008 to October 2010.

¶ 12    On October 21, 2010, counsel for the Association sent a demand letter seeking payment of the balance of VMO's delinquent assessments. Four days later, Oviedo sent a letter to Osorio dated October 25, 2010. The letter stated that it had come to Oviedo's attention that Osorio had "unilaterally" incurred unauthorized expenses without notice to the other unit owners, including retaining an attorney. The letter further stated that no meetings had been held since 2008 and no annual budgets had been approved. Oviedo concluded that Osorio's actions were "tantamount to" a breach of fiduciary duty, "wrongful disassociation, mismanagement and the perpetration of *ultra vires* acts." The letter stated that Osorio was "hereby demanded to produce" various Association documents and records and that these documents were to be delivered to Oviedo's office within 15 days of the date of the request. Oviedo's letter did not reference the Condominium Property Act (Condominium Act) (765 ILCS 605/1 *et seq.* (West

2010)), the General Not For Profit Corporation Act of 1986 (Not For Profit Act) (805 ILCS 105/101.01 *et seq.* (West 2010)), or section 13-72-080 of the Chicago Municipal Code (Municipal Code) (Chicago Municipal Code § 13-72-080 (2010)).

¶ 13    On November 3, 2010, Oviedo sent Osorio another letter in response to correspondence received from Osorio on November 2 (a copy of which is not included in the record). In the November 3 letter, Oviedo stated that Osorio's correspondence failed to respond to his previous demand, and he repeated that he had demanded production of various documents and records relating to the Association. Oviedo then threatened to file a lawsuit against Osorio personally, in which he would seek attorney fees.

¶ 14    The Association responded to Oviedo's October 25 letter on November 16, 2010, noting that it was not the responsibility of the Association to produce copies of the records. The letter informed Oviedo that the records were available for his review and he would be able to make copies at his own expense. However, the Association also scanned all bank statements for the years 2008 through 2010 and provided them to Oviedo via email.

¶ 15    Oviedo did not request an appointment to review the remaining Association records. Instead, in a letter addressed to counsel for the Association dated November 19, 2010, Oviedo stated that he had "placed [counsel] on notice" that he suspected he had been "frozen out" of the Association and had not been provided with notice or opportunity to vote on the retention of counsel and that Osorio had "failed to follow corporate formalities and further breached her fiduciary duties." Oviedo then stated: "Your continued reliance on unethical, false and misleading representations and premises in your collection attempts will be referred to the ARDC for investigation." Oviedo claimed that not only had Osorio failed to provide the documents he requested, she also failed to make them available for inspection or copying "despite now several repeated requests." Oviedo said that he was attempting to resolve "an internal matter among equal members of the corporation concerning the management of the building" and requested that a properly noticed meeting of the board be held. The record contains no evidence of requests to review the records on specific dates, nor any evidence that such requests were denied.

¶ 16    The Association filed a forcible entry and detainer action against VMO and Oviedo in December 2010.[1] Osorio arranged to meet with Oviedo on January 12, 2011, to discuss any issues he had with the Association and to address alternative arrangements for Oviedo to pay his past-due balance. Although he had agreed to the time, date and location of the meeting, Oviedo failed to attend.

¶ 17    On February 15, 2011, Oviedo filed a complaint against the Association and Osorio. The original complaint consisted of three counts: violation of the Condominium Act (765 ILCS 605/1 *et seq.* (West 2010)) and the Not For Profit Act (805 ILCS 105/101.01 *et seq.* (West 2010)), breach of fiduciary duty owed by Osorio to Oviedo and VMO, and breach of fiduciary

---

[1]Three cases involving one or more of the same parties were consolidated for convenience and economy: (1) No. 10 M1 729013, the forcible entry and detainer action filed by the Association against VMO and Oviedo, which has been fully resolved; (2) No. 11 CH 5620, the subject of this appeal; and (3) No. 12 CH 6449, a pending action (as of the filing of this appeal) by the Association against VMO seeking judicial sale of the unit for continued failure to pay monthly assessments. We will only include details relating to the other cases as necessary to provide a complete background for this appeal.

duty owed by Osorio to the Association. On June 6, 2011, an order was entered awarding possession of VMO's unit to the Association in the forcible action.

¶ 18 The Association filed a motion to dismiss on September 2011, and the motion sought sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994). The motion for sanctions was denied on December 28, 2011.

¶ 19 On March 28, 2012, Oviedo filed his third amended complaint, consisting of six counts: (I) *quantum meruit*; (II) unjust enrichment; (III) violation of section 13-72-080 of the Municipal Code (Chicago Municipal Code § 13-72-080 (2010)); (IV) violation of the Condominium Act (765 ILCS 605/1 *et seq.* (West 2010)) and the Not For Profit Act (805 ILCS 105/101.01 *et seq.* (West 2010)); (V) breach of fiduciary duty owed by Osorio to Oviedo and VMO; and (VI) breach of fiduciary duty to the Association. The parties filed cross-motions for summary judgment.

¶ 20 On August 30, 2012, the trial court granted the Association's motion for summary judgment on counts I, II, V, and VI, the counts seeking damages and other relief as a result of claimed breaches of fiduciary duty by Osorio. The trial court granted Oviedo and VMO's motion for summary judgment on counts III and IV, the two counts involving the inspection of the books and records of the Association.

¶ 21 On September 21, 2012, Oviedo filed a petition for attorney fees, costs, damages and injunctive relief, seeking $71,971 in attorney fees, $25,000 in compensatory damages, and $20,000 in punitive damages. After the petition was amended and briefed, the trial court awarded VMO a total of $27,104 in attorney fees, solely for the prosecution of count III under the Municipal Code.

¶ 22 The Association filed a notice of appeal on November 7, 2013, appealing the orders of October 31, 2013 (awarding attorney fees to VMO), August 30, 2012 (granting Oviedo and VMO summary judgment on counts III and IV), and December 28, 2011 (denying the Association's motion for Rule 137 sanctions).

¶ 23 ANALYSIS

¶ 24 The Association first contends that the trial court erred in granting partial summary judgment to VMO and Oviedo on counts III and IV. We agree.

¶ 25 Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010); *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). When the parties file cross-motions for summary judgment, the court is invited to decide the issues presented as a question of law. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. However, if the court determines that an issue of genuine material fact exists, it is not obligated to render summary judgment. *Id*. We review an order granting summary judgment *de novo*. *Id*. ¶ 30.

¶ 26 Section 19(a) of the Condominium Property Act provides, in relevant part, that a condominium association shall maintain certain financial records, including records of all receipts and expenditures, and any contracts to which the association is a party. 765 ILCS 605/19(a)(6), (9) (West 2010). Any member of the association has the right to inspect, examine and make copies of these records. 765 ILCS 605/19(e) (West 2010). The member wishing to exercise this right must submit a written request, specifically identifying the records to be

- 5 -

examined, and stating a proper purpose for the request. *Id*. The failure of the association to make the requested records available within 30 business days of receipt of the request shall be deemed a denial. *Id*.

¶ 27    Section 19(e) further provides that in an action to compel examination of the records, the burden of proof is upon the member to establish that the member's request is based on a proper purpose. *Id*. Any member who prevails in an enforcement action is entitled to recover reasonable attorney fees only if the court finds that the association's denial was made in bad faith. *Id*.

¶ 28    Section 107.75 of the Not For Profit Act also requires that any member wishing to examine the books and records of the corporation must have a proper purpose, but upon making a proper written demand, is entitled to examine the records "at any reasonable time or times." 805 ILCS 105/107.75(a) (West 2010). There is no time frame provided in the Not For Profit Act for the corporation to make the records available upon receipt of a proper request.

¶ 29    At the time of Oviedo's letter, section 13-72-080 of the Municipal Code provided that "[n]o person shall fail to allow unit owners to inspect the financial books and records of the condominium association within three business days of the time written request for examination of the records is received." Chicago Municipal Code § 13-72-080 (2010). The ordinance does not contain any language relating to the requirement that the request be made for a proper purpose.

¶ 30    As an initial matter, there are numerous problems with Oviedo's so-called request to inspect the records. Oviedo's stated purpose for the inspection request is an alleged series of unauthorized expenses, of which the only example he provides is Osorio's retention of an attorney to assist her in collecting Oviedo's chronically past-due assessments. The request does not reference the Municipal Code, the Condominium Act or the Not For Profit Act. The letter stated that the Association was "hereby demanded to produce" certain documents, primarily related to the financial transactions of the Association, and concluded by stating that the requested documents were to be produced at Oviedo's office within 15 days of the date of the request.

¶ 31    There is nothing in the letter to suggest that Oviedo had any intention of requesting an inspection of the records pursuant to the Municipal Code, the Condominium Act, or the Not For Profit Act. The version of the Municipal Code in effect at that time required that records be made available for inspection within 3 business days of the request while the Condominium Act requires inspection within 30 days; however, a request for records to be produced and delivered within 15 days does not comport with any relevant ordinance or statute. Moreover, there is nothing in the Municipal Code, the Condominium Act, or the Not For Profit Act that requires an Association to deliver documents to a location specified by the person requesting those documents. Thus, the letter cannot be considered a proper written demand for an inspection of records pursuant to any local ordinance or statute governing condominium associations.

¶ 32    We also cannot ignore the requirement in the Condominium Act that the request for an inspection of the financial records must be made for a proper purpose, even though the Municipal Code contains no such requirement. Our supreme court recently addressed the issue of whether this particular section of the Municipal Code was a valid exercise of the City of Chicago's home rule authority in *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶¶ 29-44. As part of its analysis, the court observed that where an ordinance is silent

- 6 -

on a particular provision that is included in the statute, the ordinance does not supersede the statute but, rather, the statute fills a gap in the ordinance. *Id.* ¶ 41.

¶ 33    It would be unreasonable to conclude that the drafters of the Municipal Code intended for unit owners to be able to request inspection of the financial records for any reason, including for purposes of harassment or retaliation. We therefore conclude that the requirement in both the Condominium Act and the Not For Profit Act that the request be made for a proper purpose is not superseded by the Municipal Code, which is silent on this issue, but rather fills a gap in the ordinance.

¶ 34    This court has held that a proper purpose has been established where a unit owner asserts a good-faith fear of mismanagement of financial matters by the association. *Taghert v. Wesley*, 343 Ill. App. 3d 1140, 1146-47 (2003). Moreover, "[a] proper purpose is shown when [an owner] has an honest motive, is acting in good faith, and is not proceeding for vexatious or speculative reasons." *Id.* at 1146. A mere statement alleging a facially proper purpose is not sufficient; the facts and circumstances of the request must also be considered. *West Shore Associates, Ltd. v. American Wilbert Vault Corp.*, 269 Ill. App. 3d 175, 181 (1994).

¶ 35    An examination of the facts and circumstances here demonstrates that Oviedo's request was clearly not made for a proper purpose. Oviedo had not paid assessments on his unit for well over two years. Even prior to that time, Oviedo's payment of assessments was sporadic and Osorio had to keep notifying him that he was in arrears before he would bring his account current.

¶ 36    Our supreme court has noted that "the condominium form of property ownership only works if each unit owner faithfully pays his or her share of the common expenses." *Spanish Court Two Condominium Ass'n v. Carlson*, 2014 IL 115342, ¶ 30. The record shows that Oviedo was aware that the third unit owner was not paying assessments and that foreclosure proceedings were subsequently commenced against that unit. Therefore, Oviedo knew that because of his own failure to pay assessments, the Association was only meeting its financial obligations through Osorio's payment of assessments on her own unit, and he could not reasonably allege financial mismanagement on the part of the Association for retaining an attorney to assist in collecting his past-due assessments.

¶ 37    In *Carlson*, the supreme court held that a unit owner's liability for unpaid assessments is not contingent on the association's performance. *Id.* ¶ 26. But even if the law on this issue was unclear prior to *Carlson*, there is no indication in the record that Oviedo was withholding assessments due to some dispute with the Association or any legitimate concern over the management of an association in which he steadfastly refused to participate. There is similarly no evidence that Oviedo ever expressed dissatisfaction with the Association's actions or financial management until the Association was forced to retain an attorney to collect over two years of past-due assessments from him.

¶ 38    The timing of Oviedo's request cannot be viewed in a vacuum. He first received notification from the Association's counsel in late August that he was in arrears. In early October, instead of bringing his account current, he paid less than a quarter of what he owed. When counsel for the Association followed up with a demand letter for the balance on October 21, Oviedo responded four days later with his demand for production of the Association's records.

¶ 39    The only specific purpose for seeking the documents given in Oviedo's demand letter was the Association's decision to retain an attorney in an attempt to require Oviedo, a licensed

- 7 -

attorney himself, to meet his legal obligations to the Association. Moreover, we cannot ignore the bullying nature of correspondence from Oviedo in which he threatened to sue Osorio personally and to file an ARDC complaint against counsel for the Association. Such a "scorched earth" response to the Association's demand that Oviedo comply with the most basic of a condominium unit owner's obligations is a strong indicator of the trumped-up nature of Oviedo's vague allegations of mismanagement. Therefore, even if Oviedo had cited to the proper ordinance and given the correct deadline for a response from the Association, his request did not satisfy the proper purpose requirement and was therefore invalid.

¶ 40    We also note that even putting aside the proper purpose requirement, Oviedo has not demonstrated that the Association's response to his request constituted a denial. Not only did the Association respond to his improper request by scanning copies of three years of bank statements and emailing them to Oviedo, it also informed him that although the Association was not obligated to produce copies of the records and send them to his office, the remaining records were available for his review and he could make copies at his own expense. This does not constitute a denial of Oviedo's right to inspect the records. The record is devoid of any attempt by Oviedo to set up an appointment to inspect the remaining records following this correspondence. It defies logic to conclude that a unit owner can make a written demand, receive copies of some records in response together with notification that the remaining records are available for review, fail to set up any appointment for such a review, and then file a lawsuit claiming he was denied an opportunity to inspect the records.

¶ 41    Because the Association's response was sent within 30 business days of Oviedo's request, summary judgment on count IV under the Condominium Act would have been improper even if Oviedo had satisfied the proper purpose requirement. Thus, without the proper purpose requirement, the only possible count remaining would be count III under the Municipal Code, because the Association did not respond within three business days as required by the version of the Code in effect at that time.

¶ 42    Putting aside the fact that we have already concluded that the proper purpose requirement in the Condominium Act and the Not For Profit Act fills in a gap left by the Municipal Code and Oviedo has failed to satisfy that requirement, it would be inequitable to allow Oviedo to prevail in this action on count III by virtue of sheer luck. Oviedo clearly was not relying on the 3-day requirement in the Municipal Code at the time he sent his request, which specifically gave a time frame of 15 days for production of records at his office. Indeed, Oviedo's initial complaint did not contain any reference to a violation of the Municipal Code. It is apparent, therefore, that Oviedo only came across the Municipal Code provision in the course of litigating this case against the Association.

¶ 43    In light of the fact that Oviedo did not prevail on any of his counts alleging financial mismanagement or breach of fiduciary duty, a strong indication that his lawsuit was frivolous and entirely without merit, it would be inequitable to allow him to prevail on the basis of an ordinance that he happened to stumble across in an apparent quest to retaliate against the Association for forcing him to meet his financial obligations as a unit owner. Moreover, section 13-72-080 was first amended to contain a requirement of 10 business days instead of 3 (see Chicago Municipal Code § 13-72-080 (amended Nov. 8, 2012)), and subsequently amended to match the 30-day requirement found in the Condominium Act (see Chicago Municipal Code § 13-72-080 (amended Jan. 15, 2014)). These amendments, which harmonize the Municipal Code's time requirement with that contained in the Condominium Act, reinforce

our conclusion that it would be inequitable to allow Oviedo to rely on an inordinately short time requirement that even he was unaware of when he made his demand.

¶ 44 We therefore conclude that the circuit court erred in granting partial summary judgment in favor of VMO and Oviedo on counts III and IV. Summary judgment should not have been granted on count IV because Oviedo failed to satisfy the proper purpose requirement and, in any event, the Association made the requested records available for inspection within 30 business days as required by the Condominium Act. Summary judgment was improper on count III because the proper purpose requirement in the Condominium Act and the Not For Profit Act fills the gap regarding this requirement that exists in the Municipal Code and, as noted, Oviedo failed to satisfy the requirement that his request was made for a proper purpose. Moreover, it would be inequitable to allow Oviedo to take advantage of an ordinance that has since been amended to allow a response within 30 business days when Oviedo did not know of the 3-day requirement at the time of his request, demanded production of the documents within 15 days rather than 3, did not allege a violation of the Municipal Code in his initial complaint, and did not prevail on any other count in his complaint.

¶ 45 Because we are reversing the order granting partial summary judgment in favor of VMO and Oviedo, VMO is not entitled to attorney fees and the order awarding such fees is vacated.

¶ 46 Finally, the Association contends that the trial court erred in denying its motion for sanctions pursuant to Rule 137 (Ill. S. Ct. R. 137 (eff. Feb. 1, 1994)). An order denying Rule 137 sanctions will not be disturbed on review absent an abuse of discretion. *Mohica v. Cvejin*, 2013 IL App (1st) 111695, ¶ 47. The Association correctly notes that this deferential standard of review does not prevent this court from independently reviewing the record to determine whether the facts warrant an abuse of discretion finding. See *id*. But we think the better course is to allow the trial court, on consideration of our views regarding the *bona fides* of Oviedo's claims, to revisit the Association's request for sanctions on remand. To this end, we vacate the order denying the Association's motion for Rule 137 sanctions and remand this matter to the trial court for further proceedings.

¶ 47 CONCLUSION

¶ 48 For the reasons stated, we conclude that the circuit court erred in granting partial summary judgment in favor of VMO and Oviedo on counts III and IV. We reverse the circuit court's order granting partial summary judgment and vacate the order awarding attorney fees to VMO. The Association and Osorio's cross-motion for summary judgment is therefore granted in its entirety. We further vacate the circuit court's order denying the Association's motion for Rule 137 sanctions.

¶ 49 Reversed in part and vacated in part; cause remanded.